28 P.3d 729 (2001)
144 Wash.2d 442
In the Matter of the Personal Restraint of Jeffrey Lynn CONNICK, Petitioner.
No. 69938-1.
Supreme Court of Washington, En Banc.
Argued May 31, 2001.
Decided August 2, 2001.
As Amended August 6, 2001.
*730 Paul J. Wasson, II, Spokane, for Petitioner.
Norm Maleng, King County Prosecutor, Deborah A. Dwyer, Deputy, Seattle, for Respondent.
SMITH, J.
Petitioner Jeffrey Lynn Connick seeks review of an order of the Court of Appeals, Division One, which dismissed his personal restraint petition and denied remand to the King County Superior Court for re-sentencing on his conviction for intimidating a witness because there was no evidence in the record to substantiate Petitioner's claim that his multiple count convictions in North Carolina constituted the "same criminal conduct" which would have avoided the trial court's use of an incorrect offender score and imposition of a sentence above his standard sentence range. This court granted review. We affirm the Court of Appeals in dismissing Petitioner's personal restraint petition.

QUESTION PRESENTED
The question presented in this case is whether Petitioner's 1992 North Carolina convictions for breaking and entering and for larceny constituted the "same criminal conduct" for purposes of calculating his offender score under the Sentencing Reform Act of 1981 (SRA) upon his 1999 conviction in the King County Superior Court for intimidating a witness.

STATEMENT OF FACTS
On January 30, 1999 at 3:45 PM Petitioner Jeffrey Lynn Connick was apprehended for shoplifting by named victim, a loss prevention officer for Nordstrom's at Northgate Mall in Seattle.[1] Named victim was subpoenaed by the State to testify as a witness at trial. On April 8, 1999, while at work, she received a letter through the United States mail which read:
If you as much as give a statement to the Police or testify against me I will kill you.... If you don't think I am capable of this note that I've spent 15yrs in prison, I know where you work I know where you live and your birthdate is 7-12-73 So don't play with me this is your only warning Bitch I was the # 2 hammer for the Aryan Brotherhood for 8yrs in Texas and I am not playing with you. I a[m] very serious Lady you better not contact police about this you better just do it.[2]
The letter was signed "Jeffrey Connick" and the signature appeared to match Petitioner's signature.[3] The return address on the envelope was the King County Jail, with Petitioner's name and booking number on it.[4] After she received the letter named victim was "extremely scared," burst into tears and became concerned about her safety.[5]
On April 13, 1999, the King County Prosecuting Attorney filed an information in the King County Superior Court charging Petitioner Connick with intimidating a witness. The information read:
That the defendant JEFFREY LYNN CONNICK in King County, Washington, during a period of time intervening between April 6, 1999, through April 8, 1999, by use of a threat against [victim] a current *731 or prospective witness, did knowingly attempt to induce that person to elude the legal process summoning her to testify, induce that person to absent herself from an official proceeding, induce that person not to report information which was relevant to a criminal investigation, and induce that person not to give truthful or complete information relevant to a criminal investigation;
Contrary to RCW 9A.72.110(1), (3), (4), and against the peace and dignity of the State of Washington.[6]
On May 5, 1999, Petitioner Connick entered a plea of "guilty" to the charge of intimidating a witness, a Class B felony.[7]
Prior to the sentencing hearing on June 4, 1999, Petitioner and the Prosecuting Attorney entered into a plea agreement based upon the Prosecuting Attorney's determination that under the SRA Petitioner's offender score was 6, with a seriousness level of VI, resulting in a standard range of 46 to 61 months for the offense of intimidating a witness.[8] The Prosecuting Attorney's calculation of the offender score was based upon the record of convictions indicated in Chart I:

 CHART I
-------------------------------------------------------------------------------------------------------------------
PRIOR CONVICTION DATE OF SENTENCING JURISDICTION OFFENDER SCORE
-------------------------------------------------------------------------------------------------------------------
Theft (over $750) April 13, 1989 (1/2/90)[9] Dallas County, 2
 (2 counts) Texas
Breaking and Entering July 14, 1992 North Carolina 1
 (1992CRS001591)
Larceny July 14, 1992 North Carolina 1
 (1992CRS001591)
Larceny July 14, 1992 North Carolina 1
 (1992CRS001275)
Taking Motor Vehicle March 17, 1994 California 1[10]
-------------------------------------------------------------------------------------------------------------------

At the sentencing hearing, the Prosecuting Attorney restated his belief that Petitioner's offender score was 6, resulting in a standard range of 46 to 61 months, and recommended a sentence of 50 months.[11] In response, the trial court, the Honorable Harriett M. Cody, uestioned the disparity between the Prosecuting *732 Attorney's calculation of Petitioner's offender score as 6 and the Presentence Investigation Report from the Department of Corrections (DOC) which calculated his offender score as 9.[12] The presentence report in identifying Petitioner's criminal history listed three convictions not listed by the Prosecuting Attorney. Those convictions are italicized in Chart II:[13]

 CHART II
-------------------------------------------------------------------------------------------------------------------------
 OFFENDER
PRIOR CONVICTION DATE OF SENTENCING JURISDICTION SCORE[14]
-------------------------------------------------------------------------------------------------------------------------
Theft (over $750) January 2, 1990 Dallas County, 2
 (2 counts) Texas
Theft (over $750) April 13, 1989 Garland, Texas 1
Breaking and Entering, Count I July 14, 1992 North Carolina 1
 (1992CRS001591)
Felony Larceny, Count II July 14, 1992 North Carolina 1
 (1992CRS001591)
Felony Larceny July 14, 1992 North Carolina 1
 (1992CRS001275)
Breaking and Entering, Count I July 14, 1992 North Carolina 1
(1992CRS001592)
Felony Larceny, Count II July 14, 1992 North Carolina 1
(1992CRS001592)
Taking [Motor] Vehicle March 17, 1994 California 1
 (SZ032283A)
-------------------------------------------------------------------------------------------------------------------------

At the sentencing hearing, while the Prosecuting Attorney was reviewing the presentence report, Petitioner's lawyer, Ms. Leona A. Thomas, made the following statement to the court:

Your honor, I think I can shortcut this. For the purpose of this hearing only, it is Mr. Connick's desire to move this forward, and he will agree that his scorefor the purpose of this hearing onlyis 9, and his standard range is 77 to 102 months.[15]
The trial court indicated her understanding of Ms. Thomas' statement by stating "the defendant, has indicated that ... [he] will stipulate to the offender score of 9 as reflected on the D.O.C. report."[16] The Prosecuting Attorney responded that he was "perfectly willing to accept the stipulation" but expressed uncertainty concerning its implications for any future convictions for Petitioner.
The following further discussion occurred between Judge Cody and Petitioner's counsel:
[The Court] I assume counsel has had an opportunity to discuss that with Mr. Connick?
[Ms. Thomas] Well, my position is that he has the ability to say that this is his score for the purposes of this hearing only, if that can be noted for the record. At any juncture, the [Petitioner] has the ability to demand that the State actually prove the individual convictions, and obviously it is not going to be an issue for some time *733 because Mr. Connick is going to be incarcerated for a fairly lengthy period.
[The Court] Okay. Well, I will proceed with judgment and sentence today, with the offender score assigned to the [Petitioner] of 9, ... with the understanding that while Mr. Connick is stipulating to this calculation of his offender score today, ... though they have not been proven by the State through certified copies of the judgment and sentences at this time and I would ask [Prosecuting Attorney] to note that in the judgment and sentence.[17]
After hearing victim statements from named victim and her father, the trial court sentenced Petitioner to "the top end of the standard range, 102 months" for intimidating a witness, based upon an offender score of 9.[18]
On May 17, 2000, Petitioner Connick filed a personal restraint petition in the Court of Appeals, Division One, contending the sentencing court miscalculated his offender score.[19] He argued that several of his prior convictions in Texas[20] and in North Carolina[21] were improperly counted twice in calculating his offender score. He also claimed those prior convictions constituted the "same criminal conduct" and thus "should have only counted as two points total" instead of five points.[22] He submitted no certified or authenticated documents to support his claim but merely submitted informal photocopies of certain documents.
On June 29, 2000, the Court of Appeals, in an order signed by Acting Chief Judge Mary Kay Becker, dismissed Petitioner's personal restraint petition in which he claimed his offender score should have been lower than 9.[23] The order stated that:
[P]etitioner fails to provide this court with a record sufficient to review his claim of sentencing error. Except for petitioner's conclusory allegations, there is nothing in the record to suggest that the sentencing court miscalculated his offender score. "If the petitioner's allegations are based on matters outside the existing record, the petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief."[24]... Petitioner has not carried his threshold burden here. Accordingly, petitioner has not stated grounds upon which relief can be granted by way of a personal restraint petition.[25]
On July 28, 2000, Petitioner filed a motion for discretionary review claiming the Court of Appeals erred in dismissing his personal restraint petition.[26] He included with his motion photocopies of documents relating to his King County judgment and sentence for intimidating a witness. On October 4, 2000, the Supreme Court Commissioner, based upon review of the limited information identifying Petitioner's prior convictions on the judgment and sentence, determined the documents "d[id] appear to support [Petitioner's] claim that several of *734 his prior convictions were counted twice."[27] The Commissioner's ruling directed the King County Prosecuting Attorney to file a response to the motion. The State filed its response on November 2, 2000.[28]
On November 14, 2000, the Supreme Court Commissioner issued a ruling denying review because there was no evidence to support Petitioner's assertion that some or all of his prior out-of-state convictions encompassed the same criminal conduct and that, based upon additional documents submitted by the State in its response, the North Carolina convictions were actually two sets of breaking and entering, two sets of larceny and a third larceny conviction, all entered on the same date under three separate case numbers.[29] The Commissioner determined the convictions were not counted twice and therefore Petitioner had not established that the Court of Appeals erred in dismissing his personal restraint petition and that review was not otherwise justified under RAP 13.5(b).[30]
Petitioner filed a motion to modify the Commissioner's ruling on December 1, 2000.[31] On December 5, 2000, he wrote a letter to the Robeson County Superior Court in North Carolina requesting a copy of his "1992CR felony conviction" and "plea agreement pertaining to this conviction."[32] The North Carolina court received his letter on December 11, 2000.[33] Petitioner filed a subsequent motion to amend his motion to modify on December 22, 2000, which included as attachments uncertified and unauthenticated[34] documents"Judgment and Commitment" and "Transcript of Plea" for State of North Carolina v. Jeffrey Connick (File Numbers 92 CRS 1275, 1591, 1592)he purportedly received from the North Carolina court in response to his request.[35]
On January 10, 2001, this court directed the State to file a responsive pleading addressing the following questions: "(1) Do Connick's Breaking and Entering and Larceny convictions constitute the same criminal conduct for purposes of calculating his offender score? and (2) Has Connick properly raised the issue in his Motion to Amend?"[36] The State filed its response on January 23, 2001.[37]
On February 6, 2001, this court granted Petitioner's motion to modify the Commissioner's ruling and directed that counsel be appointed to represent Petitioner in this proceeding.[38]

DISCUSSION
Petitioner Jeffrey Lynn Connick contends the Court of Appeals and the Supreme Court *735 Commissioner erred in dismissing his personal restraint petition because the offender score used in determining his standard sentence range was incorrectly calculated for his conviction of intimidating a witness, and his case therefore should be remanded to the trial court for resentencing.[39] Respondent State of Washington counterargues that Petitioner's offender score was correctly calculated by the trial court.[40] Respondent contends that the two sets of North Carolina convictions were not counted twice because they did not constitute the "same criminal conduct" as defined under RCW 9.94A.360(5)(a)(i) and RCW 9.94A.400(1)(a), and that the correct offender score of 9 was used to determine the proper standard range of 77 to 102 months with a high-end sentence of 102 months.[41] However, Respondent does argue that Petitioner, by stipulating at the sentencing hearing to an offender score of 9, waived his right to challenge the agreed offender score, and that Petitioner has not established in this personal restraint proceeding that the trial court committed an unconstitutional error amounting to a miscarriage of justice.[42]
RCW 9.94A.360(5)(a)(i) reads:
In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, except: ...
(i) Prior offenses which were found, under RCW 9.94A.400(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently... whether those offenses shall be counted as one offense or as separate offenses using the "same criminal conduct" analysis found in RCW 9.94A.400(1)(a), and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used. The current sentencing court may presume that such other prior offenses were not the same criminal conduct from sentences imposed on separate dates, or in separate counties or jurisdictions, or in separate complaints, indictments, or informations[.]
RCW 9.94A.400(1)(a) reads:
[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime.... "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.

(Emphasis added.)
Petitioner contends the photocopies of documents he provided this court purporting to be the "Judgment and Commitment" and "Transcript of Plea" for File Numbers 92CRS1275, 92CRS1591 and 92CRS1592 from the Robeson County Superior Court in North Carolina establish that his two sets of North Carolina convictions constitute the "same criminal conduct."[43] He concedes that he has not substantiated his claim that his prior Texas convictions "could further reduce ... [his] offender score as erroneously calculated by the trial court and D.O.C."[44]
*736 Both Petitioner and Respondent have used and referred to documents which do not meet the authentication test under Evidence Rules 901 and 902, chapter 5.44 RCW, or CR 44. Those documents include uncertified or unauthenticated photocopies of apparent or purported court records. This represents a "loose practice" which we do not condone especially by members of the bar. Although functioning pro se through most of these proceedings, Petitionernot a member of the baris nevertheless held to the same responsibility as a lawyer and is required to follow applicable statutes and rules.[45]
ER 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Under subsection (b)(7), the rule reserves the subject of "public records or reports" with the note "See RCW 5.44 and CR 44."
ER 902 provides for self-authentication of documents, stating that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following" and lists in lettered subsections:
(a) Domestic Public Documents Under Seal. A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, ... or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
(b) Domestic Public Documents Not Under Seal. A document purporting to bear the signature in the official capacity of an officer or employee of any entity included in section (a), having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
....
(d) Certified Copies of Public Records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with section (a), (b), or (c) of this rule or complying with any applicable law, treaty or convention of the United States, or the applicable law of a state or territory of the United States.
....
(h) Acknowledged Documents. Documents accompanied by a certificate of acknowledgement executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgements.
....
(j) Presumptions Created by Law. Any signature, document, or other matter declared by any law of the United States or of this state to be presumptively or prima facie genuine or authentic.
Chapter 5.44 RCW relating to proof of public documents provides in specific instances as follows:
RCW 5.44.010 Court records and proceedingsWhen admissible. The records and proceedings of any court of the United States, or any state or territory, shall be admissible in evidence in all cases in this state when duly certified by the attestation of the clerk, prothonotary or other officer having charge of the records of such court, with the seal of such court annexed.
RCW 5.44.040 Certified copies of public records as evidence. Copies of all records and documents on record or on file in the offices of the various departments of the United States and of this state or any other state or territory of the United States, when duly certified by the respective officers having by law the custody *737 thereof, under their respective seals where such officers have official seals, shall be admitted in evidence in the courts of this state.
RCW 5.44.130 Seal, how affixed. A seal of court or public office, when required to any writ, process, or proceeding to authenticate a copy of any record or document, may be affixed by making an impression directly on the paper which shall be as valid as if made upon a wafer or on wax.
CR 44 relating to proof of official records provides in part:
(a) Authentication.

(1) Domestic. An official record kept within the United States, or any state, district, or commonwealth, territory, ... or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by the officer's deputy, and accompanied by a certificate that such officer has the custody. The certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office or official custody of the seal of the political subdivision and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of the officer's office or the seal of the political subdivision.
Although the State does not question the authenticity of the uncertified and unauthenticated photocopies of documents submitted by Petitioner, there is no stipulation in the record nor an order of any court to accept those documents for what they purport to be. Additionally, the State has itself submitted similar unauthenticated documents. However, because of the decision we reach in this case, we will allow reference to those documents without concluding their admissibility. It is beyond question that all parties appearing before the courts of this State are required to follow the statutes and rules relating to authentication of documents. This court will in future cases accept no less.
Petitioner agrees with the trial court's determination that his larceny conviction in North Carolina, File Number 92CRS1275, counted as 1 point in calculating his offender score.[46] However, he argues that the set of breaking and entering and larceny convictions in North Carolina, File Number 92CRS1591, and the other similar set of convictions under File Number 92CRS1592, should have been counted as 1 point for each setfor a total of 2 pointsand not counted as 4 points, as was done by the sentencing court.[47] Petitioner also asserts that the transcript of plea for his North Carolina cases further substantiates his claim because it shows that he entered a plea of "guilty" to two counts of breaking, entering and larceny (felonious) and one count of felonious larceny and received a seven-year sentence.[48] Respondent argues that the documents provided by Petitioner
show conclusively only that the [sentences for] burglary ("[b]reak and [e]nter") and theft ("larceny") under # 92 CRS 1591 both occurred on 12-23-91, and that the [sentences for the] similar pair of crimes under # 92 CRS 1592 both occurred on 1-14-92. There are three different victims listed on the Judgment and Commitment.... [and] there is no concrete evidence of criminal intent. [Petitioner] ... expects this court to assume that his intent was the same in each burglary/theft pair.... [He] has not met his burden merely by showing a possibility that the criminal intent was the same for the two crimes.[49]
*738 Two or more current offenses satisfy the same criminal conduct test if they (1) require the same objective criminal intent (which can be measured by determining whether one crime furthered the other); (2) are committed at the same time and place; and (3) involve the same victim.[50] "`If any one element is missing, multiple offenses cannot be said to encompass the same criminal conduct, and they must be counted separately in calculating the offender score[.]'"[51] To determine whether two or more criminal offenses involve the same criminal intent, this court in State v. Dunaway[52] established the objective criminal intent test, which requires a court to focus on "the extent to which a defendant's criminal intent, as objectively viewed, changed from one crime to the next."[53]
Petitioner does not indicate in what manner the record in this case or the documents he provided meet the same criminal conduct test to support his claim that the two sets of his prior North Carolina convictions constituted the same criminal conduct. He provides no facts. Nor does he cite any authority.
Respondent contends the first requirement of the same criminal conduct test is not met by Petitioner because the offense of breaking and entering and the offense of larceny do not necessarily involve the same criminal intent.[54] Respondent's argument that the criminal intent for both breaking and entering[55] and larceny[56] are distinct is inconsistent with the Dunaway test. One might logically conclude that a person charged with the offense of breaking and entering may have broken into and entered a building with intent to commit a larceny. Such a conclusion is not logical in this case, however, because of the paucity of facts. Petitioner has provided nothing in the record before this court to establish any facts relating to his North Carolina convictions such as time, place, circumstances of breaking and entering, the nature of the larceny committed, or identification of victims.
Respondent disputes Petitioner's claim that the two sets of North Carolina *739 convictions occurred at the same time and place and involved the same victim. Even assuming the reliability of the uncertified photocopies of the North Carolina court documents, nothing in those documents indicates that the two sets of offenses occurred at the same time and place. The judgment and commitment lists file numbers and offenses committed; dates of offenses; identifies each offense as a felony with a maximum term of 10 years and a presumptive term of 3 years; and indicates names, addresses and amounts of restitution for three named parties. There is not sufficient information for this court to determine the time and place of the two sets of breaking and entering and larceny. Nor is there sufficient information for this court to determine whether the two sets of offenses involved the same victim or multiple victims. Although three persons are named for restitution purposes, there is no indication which name corresponds to which conviction. Because RCW 9.94A.400(1)(a) provides that multiple crimes affecting multiple victims may not be considered "the same criminal conduct,"[57] there is not sufficient information before the court in this case to determine whether there was the "same victim" in either set of North Carolina cases to meet the test under our "same criminal conduct" statutes.
Even assuming the same criminal intent requirement might be met for each set of Petitioner's North Carolina convictions 92CRS1591 and 92CRS1592Petitioner has not satisfied the additional requirements by establishing the offenses were committed at the same time and place and involved the same victim.
There is nothing before the court in this case to establish that the trial court incorrectly calculated Petitioner's offender score by not counting both sets of North Carolina convictions as the same criminal conduct under RCW 9.94A.400(1)(a). Both sets of North Carolina convictions were properly counted as 2 points eachfor a total of 4 pointswhich resulted in correct calculation of Petitioner's offender score as 9, with a standard sentence range of 77 to 102 months. Imposition of a sentence of 102 months was proper.
Petitioner argues that his offender score was incorrectly calculated, that such a defect cannot be waived, and that the issue was not addressed at the sentencing hearing because he had ineffective assistance of counsel.[58] Respondent cites State v. Nitsch[59] in support of its argument that Petitioner waived his right to challenge the calculation of his offender score by not raising the issue before the trial court and by affirmatively acknowledging his offender score was 9 for purposes of sentencing.[60]
This court has determined that incorrect calculation of an offender score constitutes a fundamental defect in sentencing resulting in a complete miscarriage of justice which requires relief in a personal restraint proceeding.[61] However, because Petitioner has not established that he was sentenced on the basis of an incorrectly calculated offender score for his conviction of intimidating a witness, he has not demonstrated that he is entitled to relief under RAP 16.4.[62]
*740 Similarly, Petitioner has not established that he had ineffective assistance of counsel at the sentencing hearing. He asserts that his lawyer's representation was ineffective because she agreed to calculation of his offender score and his sentence without sufficient investigation into the prior convictions used to calculate his offender score of 9. He claims his lawyer's actions constituted "deficient preparation and not sentencing strategy."[63] Respondent argues that Petitioner's decision to proceed with sentencing after noting additional prior convictions in the presentence report might well have been because of his "concern that any delay would lead to the discovery of additional criminal history."[64] In order to establish that his counsel's actions constituted ineffective assistance of counsel, Petitioner must show her performance was deficient, and not a matter of trial strategy or tactics, and that he was prejudiced.[65] He has not provided sufficient evidence or argument to support his claim of ineffective assistance of counsel.
Respondent argues that Petitioner waived his right to challenge the calculation of his offender score by not bringing to the attention of the trial court his claim that his prior North Carolina convictions encompass the same criminal conduct under RCW 9.94A.400(1)(a).
This court in State v. Ford[66] observed that "[u]nder the SRA, acknowledgment allows the judge to rely on unchallenged facts and information introduced for the purposes of sentencing."[67] "[A] defendant does not `acknowledge' the State's position ... absent an affirmative agreement beyond merely failing to object."[68] In this case, Petitioner's unchallenged acceptance during sentencing of information on his offender score and sentence range was properly relied upon by the court in calculating his offender score because a court may rely upon facts and information acknowledged by a defendant.
Unlike the defendants in Ford, Petitioner did not merely remain silent, but instead agreed to an offender score of 9 for the purposes of sentencing on his conviction for intimidating a witness. By doing so, he adopted the calculation of his offender score as 9, as determined by the DOC in the presentence report, and agreed to count his two sets of prior North Carolina convictions as separate criminal conduct for purposes of calculating his offender score on his King County conviction of intimidating a witness. He waived the right to challenge the reliance of the sentencing court upon his own representations.
Respondent contends that, assuming Petitioner did establish that his prior North Carolina convictions encompassed the same criminal conduct, the sentencing judge nevertheless has discretion under the burglary antimerger statute, RCW 9A.52.050,[69] to *741 count those prior convictions separately in calculating his offender score. Petitioner has not adequately responded to this contention. We do not consider it necessary to consider this tangential issue.
There is not sufficient evidence in the record to establish that Petitioner's offender score was incorrectly calculated by the trial court. Even accepting the limited record and the uncertified and unauthenticated documents provided this court by Petitioner, he has not established that his two sets of prior multiple count convictions in North Carolina meet the test for "same criminal conduct" under RCW 9.94A.400(1)(a). The sentencing court used the correct offender score of 9 and the correct standard sentence range of 77 to 102 months in sentencing Petitioner to 102 monthsthe high end of the standard range.

SUMMARY AND CONCLUSIONS
Petitioner Jeffrey Lynn Connick was sentenced in the King County Superior Court to 102 months for intimidating a witness upon a correctly calculated offender score of 9 under the Sentencing Reform Act. Based upon the limited record and the uncertified and unauthenticated documents provided this court by Petitioner, he has not met the test to establish that his two sets of prior multiple count convictions in North Carolina constituted the "same criminal conduct" under RCW 9.94A.400(1)(a).
Two or more current offenses satisfy the same criminal conduct test under Washington law if the crimes (1) require the same criminal intent (which can be measured by determining whether one crime furthered the other); (2) are committed at the same time and place; and (3) involve the same victim.
Even assuming the same criminal intent requirement for each set of Petitioner's North Carolina convictions for breaking and entering and for larceny might have been met in this case, Petitioner has not established the additional requirements that the offenses were committed at the same time and place and involved the same victim. There is no evidence before the court in this case to establish that the trial court incorrectly calculated Petitioner's offender score by not counting both sets of North Carolina convictions as the same criminal conduct under RCW 9.94A.400(1)(a). Imposition of a sentence of 102 months was proper.
The incorrect calculation of an offender score constitutes a fundamental defect in sentencing resulting in a complete miscarriage of justice which requires relief in a personal restraint proceeding under RAP 16.4. But Petitioner has not demonstrated he is entitled to relief under RAP 16.4. Nor has Petitioner established that he had ineffective assistance of counsel at his sentencing hearing.
The trial court used the correct offender score of 9 and the correct standard sentence range of 77 to 102 months in sentencing Petitioner to 102 monthsthe high end of the standard range.
We affirm the decision of the Court of Appeals, Division One, which dismissed the personal restraint petition of Petitioner Jeffrey Lynn Connick because there is not sufficient evidence in the record to establish that his offender score was incorrectly calculated by the trial court.
ALEXANDER, C.J., JOHNSON, MADSEN (result only), IRELAND, BRIDGE, CHAMBERS and OWENS, JJ., concur.
SANDERS, J. (dissenting)
Jeffrey Connick pleaded guilty to intimidating a witness contrary to RCW 9A.72.110. Intimidation of a witness is a seriousness level VI crime. RCW 9.94A.320. The sentencing matrix sets a standard range sentence based on the seriousness level relative to the prior offender score.
State v. Ford, 137 Wash.2d 472, 973 P.2d 452 (1999) holds where a defendant's out-of-state convictions are used to enhance his sentence, the Sentencing Reform Act of 1981(SRA) requires the offenses be classified according to comparable Washington laws. Ford, 137 Wash.2d at 477, 973 P.2d 452. Further, at sentencing *742 it is the State, not the defendant, which bears the ultimate burden of ensuring the record supports the existence and classification of out-of-state convictions. Absent a sufficient record, the sentencing court is without the necessary evidence to reach a proper decision, and it is impossible to determine whether the convictions are properly included in the offender score.
Id. at 480-81, 973 P.2d 452.
Here the state was not aware the presentence investigation report had assigned Connick an offender score of 9 rather than 6 until the morning of sentencing. Oral argument tape 1, side 1. Notwithstanding, the sentencing court set Connick's prior offender score at 9.
A prior offender score of 9 coupled with a current offense which carries a seriousness level of VI yields a standard sentencing range of 77 to 102 months. Connick was given the maximum sentence in this range. Now Connick asserts his prior offender score was erroneously calculated at 9. He contends the score should have been calculated as 6. A prior offender score of 6 coupled with a current offense which carries a seriousness level of VI yields a standard sentencing range of 46 to 61 months. RCW 9.94A.310. If the state is correct that the offender score was properly calculated at 9, Connick's maximum standard range sentence for his current offense is 8.5 years (102 months). However if Connick is correct that the prior offender score should have been set at 6, then his maximum standard range sentence is only 5.08 years (61 months).
We have recognized "illegal or erroneous sentences may be challenged for the first time on appeal." Ford, 137 Wash.2d at 477, 973 P.2d 452. See also In re Personal Restraint of Fleming, 129 Wash.2d 529, 532, 919 P.2d 66 (1996) ("[S]entencing error can be addressed for the first time on appeal under RAP 2.5 even if the error is not jurisdictional or constitutional."). Further, as the majority acknowledges, "This court has determined that incorrect calculation of an offender score constitutes a fundamental defect in sentencing resulting in a complete miscarriage of justice which requires relief in a personal restraint proceeding." Majority at 739 (citing In re Personal Restraint of Johnson, 131 Wash.2d 558, 568-69, 933 P.2d 1019 (1997); In re Personal Restraint of Greening, 141 Wash.2d 687, 9 P.3d 206 (2000)).
The majority attaches dispositive importance to Connick's stipulation to an offender score of 9 during the sentencing hearing. However in State v. Ford we said, "a defendant does not `acknowledge' the State's position regarding classification absent an affirmative agreement beyond merely failing to object." Ford, 137 Wash.2d at 483, 973 P.2d 452. In that same opinion we continued, "[T]his court `has the power and duty to correct the error upon its discovery' even where the parties not only failed to object but agreed with the sentencing judge." Id. at 477, 973 P.2d 452 (quoting State v. Loux, 69 Wash.2d 855, 858, 420 P.2d 693 (1966) (emphasis added), overruled in part on other grounds by State v. Moen, 129 Wash.2d 535, 545, 919 P.2d 69 (1996)). Thus defects in the calculation of sentencing range cannot be waived or stipulated away.
Without regard to whether Connick stipulated to his presentence report, this court "has the power and duty" to correct an apparent error in his sentencing calculation. Ford, 137 Wash.2d at 477, 973 P.2d 452. We have long held "`the existence of an erroneous sentence requires resentencing.'" Id. at 485, 973 P.2d 452 (quoting Brooks v. Rhay, 92 Wash.2d 876, 877, 602 P.2d 356 (1979)). This rule also applies to sentences imposed under the SRA where an incorrect offender score is used to calculate the standard range. Id. This precedent is inconsistent with the majority's assertion that Mr. Connick has somehow waived his right to challenge the imposition of a potentially illegal sentence. Majority at 740.
More fundamentally I disagree with the majority's conclusion that Connick has failed to demonstrate his prior offender score should have been calculated at 6 rather than 9. Majority at 741.
I remind the majority Mr. Connick is contesting not only his North Carolina convictions, but his Texas convictions as well. Connick's pro se "Motion to Amend, Motion *743 to Modify Ruling" asserts his Texas convictions were erroneously calculated. Motion to Amend at 3. He contends the second conviction listed on the presentence investigation report was actually no conviction at all, but rather was a parole revocation relating to his first Texas conviction. Id. Thus he concludes the total offender score for his Texas convictions should be 2 rather than 3. Id. Counsel appointed on Mr. Connick's behalf was unable to substantiate this claim, Br. of Pet'r at 5; however, it appears the state is willing to concede the point. The state acknowledges the documents[1] it received from Texas tend to support Connick's assertion that the latter conviction was actually a parole revocation. Br. of Resp't at 10 n. 5 (citing id. at App. G-4). To mitigate the obvious damage of its concession, the state asserts there is also evidence which suggests Connick has another Texas conviction not listed on the presentence investigation report. Id. At the very least this raises a red flag with respect to the adequacy of the record regarding Connick's Texas convictions. This inadequacy impedes our ability to resolve the issue on review and requires remand for additional fact-finding.
Further at issue are Mr. Connick's two separate multiple felony convictions in North Carolina. The first is the result of a breaking and entering and larceny that occurred on December 23, 1991. The second stems from a breaking and entering and larceny on January 14, 1992.
The gravamen of Mr. Connick's argument is his breaking and entering and larceny convictions constitute the same criminal conduct for purposes of calculating his offender score, thus his overall offender score based on his North Carolina convictions should have been 3 rather than 5. (Connick also has a third, unrelated, larceny conviction.)
[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime.
RCW 9.94A.400(1)(a). According to Washington law two or more current offenses meet the "same criminal conduct test" if the crimes (1) require the same criminal intent, (2) are committed at the same time and place, and (3) involve the same victim. State v. Garza-Villarreal, 123 Wash.2d 42, 46, 864 P.2d 1378 (1993); RCW 9.94A.400(1)(a).
The majority asserts Connick "has provided nothing in the record before this court to establish any facts relating to his North Carolina convictions such as time, place, circumstances of breaking and entering, the nature of the larceny committed, or identification of victims." Majority at 738. Not so. Connick has provided a copy of his North Carolina "Judgment and Commitment," which reads in part:

-------------------------------------------------
 Date Of
 File No.(s) And Offense(s) Offense
 92 CRS 1275Larceny 1/7/92
 92 CRS 1591Break & 12/23/91
 Enter
 92 CRS 1591Larceny 12/23/91
 92 CRS 1592Break & 1/14/92
 Enter
 92 CRS 1592Larceny 1/14/92
--------------------------------------------------

Pet'r's Br., App. A.
The breaking and entering and larceny convictions clearly occurred on the same day (on two separate occasions). One may also infer from the record each set occurred at the same place and involved the same victim. Just as the "Judgment and Commitment" lists three different dates on which Connick committed offenses, it lists three different aggrieved parties affected by the crimes:
Mark LocklearRailroad St., Box 47, St. Pauls, N.C. 28384
Larry Chavis, Rt. 1, Box 61-H, Cousins M.H.P., Shannon, N.C. 28386 *744 Lisa LocklearRt. 1, Box 61-H, Cousins M.H.P., Shannon, N.C. 28386
Pet'r's Br., App. A.
There is at least a reasonable inference that each date of criminal activity coincides with one of the aggrieved parties: Mark Locklear was the victim of a larceny on January 7, 1992; Larry Chavis was the victim of a breaking and entering and larceny on December 23, 1991; and Lisa Locklear was similarly victimized on January 14, 1992. Connick's North Carolina plea agreement also indicates his breaking and entering and larceny convictions occurred at the same time and place. He pleaded guilty to two counts of breaking, entering, and larceny and to one additional count of felonious larceny.
Thus the remaining question is whether the crimes of breaking and entering and larceny involve the same criminal intent. We established the test for determining whether crimes constitute the same criminal conduct in State v. Dunaway, 109 Wash.2d 207, 743 P.2d 1237 (1987). Trial courts are to "focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next." Dunaway, 109 Wash.2d at 215, 749 P.2d 160. Connick asserts his objective intent did not change from the breaking and entering to the larceny. Rather, he broke in to steal.
The majority here asserts, "One might logically conclude that a person charged with the offense of breaking and entering may have broken into and entered a building with intent to commit a larceny." Majority at 738. Nevertheless the majority opines such a conclusion is not logical in this case "because of the paucity of facts." Id. at 738.
However in North Carolina the elements of felonious breaking or entering include: (1) breaking or entering a building (2) with the intent to commit any felony or larceny therein. N.C. GEN.STAT. § 14-54. Thus under North Carolina law not only is it logical to assume the defendant broke and entered with the intent to commit a larceny, but in some cases it is a necessary element of the crime itself.
I believe Connick has prima facie established his North Carolina convictions for breaking and entering and larceny arose from the same criminal conduct and therefore should have been counted only once in calculating his prior offender score. If this conclusion is subject to reasonable doubt I would remand to determine further facts. Otherwise remand for resentencing is appropriate.
I dissent.
NOTES
[1] Certification for Determination of Probable Cause, Incident No. 99-137296 (Apr. 12, 1999).
[2] Prosecuting Attorney Case Summ. and Req. for Bail and/or Conditions of Release, No. 99-1-03112-8 SEA.
[3] Id.
[4] Id.
[5] Certification for Determination of Probable Cause.
[6] King County Superior Court No. 99-1-03112-8 (Apr. 13, 1999).
[7] Statement of Def. on Plea of Guilty, King County Superior Court, No. 99-1-03112-8 (May 5, 1999); See Verbatim Report of Proceedings, Sentencing Hearing, King County Superior Court, No. 99-1-03112-8 (June 4, 1999) at 2; See J. and Sentence, King County Superior Court, No. 99-1-03112-8 (June 7, 1999) at 1.
[8] State's Resp. to Mot. for Discretionary Review at 1; Statement of Def. on Plea of Guilty, King County Superior Court, No. 99-1-03112-8 (May 5, 1999); J. and Sentence at 2 (an offender score of 6 and standard range of 46 to 61 months were crossed out and an offender score of 9 and a total standard range of 77 to 102 months were interlineated); Prosecutor's Understanding of Def's Criminal History (Apr. 15, 1999); General Scoring Form; Verbatim Report of Proceedings at 2.
[9] The State indicates that both dates refer to the same conviction. State's Resp. to Mot. for Discretionary Review at 2; J. and Sentence at 2 n. 2.3.
[10] Br. of Resp. at 1-2; State's Resp. to Mot. for Discretionary Review at 1-2; See J. and Sentence at 2 n. 2.3; Prosecutor's Understanding of Def's Criminal History; General Scoring Form.
[11] State's Sentence Recommendation, No. 99-1-03112-8 (May 3, 1999); Verbatim Report of Proceedings at 2-3.
[12] Id. at 3.
[13] Presentence Investigation Report, Department of Corrections (June 1, 1999).
[14] The State indicates that the Garland, Texas conviction is different from the other Texas theft conviction. The file number for the two North Carolina convictions under 1992CRS001592 is different from the file number for the other set of North Carolina convictions included in the judgment and sentence at 2 n. 2.3. State's Resp. to Mot. for Discretionary Review at 3 nn. 3 and 4; Presentence Investigation Report, Department of Corrections (June 1, 1999) at 2; J. and Sentence, App. B, Additional Criminal History.
[15] Verbatim Report of Proceedings at 3-4. Emphasis added.
[16] Id. at 6-7. Petitioner was present with his counsel and made no contrary response.
[17] Id. at 7-8. (Emphasis added).
[18] Id. at 16; J. and Sentence at 2-3.
[19] Personal Restraint Pet. Court of Appeals, Division One, No. 46636-4-I (May 17, 2000). Petitioner did not challenge his conviction, but challenged only the length of his sentence. He only mentioned a claim of ineffective assistance of counsel.
[20] Petitioner claims his prior Texas and North Carolina convictions listed in Appendix B of the Judgment and Sentence are duplicates of those listed in paragraph 2.3 of the Judgment and Sentence. This is not correct. The Presentence Investigation Report indicates Petitioner has two separate theft (over $750) convictions in Texas. The first has a sentencing date of April 13, 1989 (Garland, Texas). The second, a two count conviction, has a sentencing date of January 2, 1990 (Dallas County, Texas). The date listed for the second theft conviction on the Judgment and Sentence (Apr. 13, 1989) seems to be incorrect. However, it is a separate and distinct conviction from that listed in Appendix B.
[21] Similarly, Petitioner's North Carolina convictions which appear to be listed twice on the Judgment and Sentence are actually two sets of breaking and entering and larceny convictions (each set was referred to by two different file numbers1992CRS001591 and 1992CRS001592) and a third larceny conviction (1992CRS001275). The breaking and entering and larceny convictions share the same sentencing date, but each has a separate file number.
[22] Personal Restraint Pet. at 4.
[23] In re Personal Restraint of Jeffrey Connick, No. 46636-4-I (June 29, 2000).
[24] In re Personal Restraint of Rice, 118 Wash.2d 876, 886, 828 P.2d 1086 (1992).
[25] Connick, No. 46636-4-I, at 2.
[26] Mot. for Discretionary Review, Washington Supreme Court, No. 69938-1 (July 28, 2000).
[27] Ruling, Supreme Court Commissioner (Oct. 4, 2000). The ruling stated "the convictions listed in Appendix B [to the Judgment and Sentence] appear to duplicate several of the convictions listed in paragraph 2.3 [of the Judgment and Sentence]."
[28] State's Resp. to Mot. for Discretionary Review (Nov. 2, 2000).
[29] Ruling Den. Review, Supreme Court Commissioner (Nov. 14, 2000). The ruling also stated that "the transcript of the sentencing hearing shows [Petitioner] waived or invited any error in the court's calculation of his offender score," citing defense counsel's stipulation to an offender score of 9 for the purposes of this sentencing hearing only.
[30] Id. RAP 13.5 provides for discretionary review of interlocutory decisions.
[31] Mot. to Modify Ruling, Washington Supreme Court (Dec. 1, 2000).
[32] Letter from Petitioner Connick to Clerk of the Robeson County Court, (Dec. 5, 2000). A copy was attached to Petitioner's "Motion to Amend, Motion to Modify Ruling Pending and scheduled to be heard on January 9, 2001," Washington Supreme Court (Dec. 22, 2000).
[33] The letter was date-stamped as filed on December 11, 2000. Id.
[34] See Evidence Rules (ER) 901 and 902.
[35] Mot. to Amend, Mot. to Modify Ruling-Pending and scheduled to be heard on January 9, 2001, Washington Supreme Court (Dec. 22, 2000). The State has not questioned the authenticity of any documents submitted by Petitioner.
[36] Order, Washington Supreme Court (Jan. 10, 2001).
[37] State's Resp. to Mot. to Modify Commissioner's Ruling, Washington Supreme Court (Jan. 23, 2001).
[38] Order, Washington Supreme Court (Feb. 6, 2001).
[39] Pet'r's Br. at 3-4.
[40] State's Resp to Mot. for Discretionary Review at 4.
[41] See State's Resp. to Mot. to Modify Commissioner's Ruling at 3-4.
[42] Id. at 3-6; Br. of Resp. at 12-16. Respondent's brief filed on May 17, 2001 for the first time claimed Petitioner invited the error in calculating his offender score.
[43] Petitioner asserts that the documents he provided show he received a concurrent sentence on three sets of consolidated charges. Pet'r's Br. at 4-5.
[44] Petitioner admits he was not able to obtain documentation concerning his Texas convictions and that he is not disputing any other prior convictions listed on the presentence report besides the Texas and North Carolina convictions. He offers on his "certification that the second Texas ... [conviction] is merely a deferred probation on the first Texas theft ... [conviction]." Pet'r's Br. at 5-6.
[45] See State v. Smith, 104 Wash.2d 497, 508, 707 P.2d 1306 (1985).
[46] Id. at 4-5.
[47] Id. at 5.
[48] Petitioner cites generally RCW 9.94A.360(6), RCW 9.94A.400(1)(a), and State v. Lessley, 118 Wash.2d 773, 827 P.2d 996 (1992), in support of his claim that "Washington should not treat those convictions any differently" than North Carolina did, as "North Carolina treated them as the same criminal conduct." He provides nothing more to support his claim. Id.
[49] State's Resp. to Mot. to Modify Commissioner's Ruling at 4.
[50] RCW 9.94A.400(1)(a); State v. Garza-Villarreal, 123 Wash.2d 42, 47, 864 P.2d 1378 (1993); See State v. Tili, 139 Wash.2d 107, 123, 985 P.2d 365 (1999).
[51] Garza-Villarreal, 123 Wash.2d at 47, 864 P.2d 1378 (quoting State v. Lessley, 118 Wash.2d 773, 778, 827 P.2d 996 (1992)).
[52] 109 Wash.2d 207, 214-15, 743 P.2d 1237 (1987).
[53] Lessley, 118 Wash.2d at 777, 827 P.2d 996.
[54] State's Resp. to Mot. to Modify Commissioner's Ruling at 4.
[55] The North Carolina statute on breaking or entering buildings, N.C. Gen.Stat. § 14-54, provides that:

(a) Any person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon.
(b) Any person who wrongfully breaks or enters any building is guilty of a Class 1 misdemeanor.
(c) As used in this section, "building" shall be construed to include any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property.
[56] The North Carolina statute on larceny of property, receiving stolen goods or possessing stolen goods, N.C. Gen.Stat. § 14-72, provides that:

(a) Larceny of goods of the value of more than one thousand dollars ($1,000) is a Class H felony. The receiving or possessing of stolen goods of the value of more than one thousand dollars ($1,000) while knowing or having reasonable grounds to believe that the goods are stolen is a Class H felony. Larceny as provided in subsection (b) of this section is a Class H felony. Receiving or possession of stolen goods as provided in subsection (c) of this section is a Class H felony. Except as provided in subsections (b) and (c) of this section, larceny of property, or the receiving or possession of stolen goods knowing or having reasonable grounds to believe them to be stolen, where the value of the property or goods is not more than one thousand dollars ($1,000), is a Class 1 misdemeanor. In all cases of doubt, the jury shall, in the verdict, fix the value of the property stolen.
(b) The crime of larceny is a felony, without regard to the value of the property in question, if the larceny is:
(1) From the person; or
(2) Committed pursuant to a violation of G.S. 14-51, 14-53, 14-54 or 14-57; or ...
[57] Lessley, 118 Wash.2d at 779, 827 P.2d 996.
[58] Pet'r's Br. at 6-10. Petitioner did not adequately address his ineffective assistance of counsel claim before this court.
[59] 100 Wash.App. 512, 997 P.2d 1000, review denied, 11 P.3d 827 (2000). The Court of Appeals determined that Defendant Nitsch did not identify a factual dispute for the trial court's resolution, did not request an exercise of the court's discretion, and had affirmatively agreed to the calculation of his standard sentence range and therefore the defendant waived his right to assert on appeal that his two current offenses encompassed the same criminal conduct.
[60] State's Resp. to Mot. for Discretionary Review at 4; State's Resp. to Mot. to Modify Commissioner's Ruling at 5-6.
[61] In re Personal Restraint of Johnson, 131 Wash.2d 558, 568-69, 933 P.2d 1019 (1997) (Petitioner's personal restraint petition was granted because of an erroneous sentence based upon an incorrectly calculated offender score); In re Personal Restraint of Greening, 141 Wash.2d 687, 9 P.3d 206 (2000).
[62] Under RAP 16.4 "[i]n order to obtain relief by way of personal restraint petition ... a person must establish (1) [the person is] being unlawfully restrained, (2) due to a `fundamental defect which inherently results in a complete miscarriage of justice[;]'" In re Personal Restraint of Fleming, 129 Wash.2d 529, 532, 919 P.2d 66 (1996) (quoting In re Personal Restraint of Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990)) (In a personal restraint petition alleging a nonconstitutional error, the burden is higher and the claimed error must demonstrate a "fundamental defect which inherently results in a complete miscarriage of justice.")
[63] Pet'r's Br. at 6-10.
[64] Br. of Resp. at 19 n. 9. Respondent states the presentence report mentions that "the DOC had not yet received any criminal history information from the Federal Bureau of Investigation" and that "[r]ecords [Respondent] received from the Garland, Texas Police Department indicate that Connick has a robbery conviction from Texas.... [which] has not been counted in his offender score."
[65] State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996) (citing Strickland v. Washington, 466 U.S. 668, 668-69, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); State v. Jeffries, 105 Wash.2d 398, 418, 717 P.2d 722, cert. denied, 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 301 (1986).
[66] 137 Wash.2d 472, 973 P.2d 452 (1999).
[67] Ford, 137 Wash.2d at 482-83, 973 P.2d 452 ("`In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgement includes not objecting to information stated in the presentence reports'.... Acknowledgment does not encompass bare assertions by the State unsupported by the evidence.").
[68] Id. at 483, 973 P.2d 452.
[69] RCW 9A.52.050 provides that "[e]very person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately."
[1] One in particular is a notarized letter from the Texas Department of Criminal Justice State Classification Committee.