[Nos. 49174-1-I; 50496-7-I. Division One. March 31, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD PARNELL WILSON, *Appellant*.

*In the Matter of the Personal Restraint of* RICHARD PARNELL WILSON, *Petitioner*.

4

*Richard Parnell Wilson*, pro se.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant/petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Ian M. Goodhew, Deputy*, for respondent.

GROSSE, J. — A law is an ex post facto law when it makes more burdensome the punishment for a crime, or increases the quantum of punishment for a crime, after its commission. The law here, increasing punishment for a third violation of a no-contact order, was enacted nearly five years before Richard Wilson committed his third violation. It applied prospectively to Wilson's future conduct, did not increase the punishment for his past conduct, and therefore did not violate ex post facto law. Further, because the law applied prospectively, it was not retroactive so as to upset the expectations of Wilson's previous plea agreement. Finally, the law was clearly worded and Wilson's no-contact order contained additional notices required by law as well as specifically citing the statute which contained penalty provisions. Neither the court nor the order was misleading about the consequences of disobeying the order and Wilson's due process rights were not violated. Affirmed.

## FACTS

Richard Wilson and Angel Davis Kelly began dating in 1999. On December 30, 2000, Wilson was arrested for assaulting Kelly and a no-contact order was entered on January 4, 2001. The order specified that Wilson was not to have contact with Kelly in person, by telephone, letter, through an intermediary, or in any other way.

The order also provided:

Violation of the provisions of this order with actual notice of its terms is a criminal offense under Seattle Municipal Code 12A.06.180, and chapter 26.50 RCW, and will subject a violator to arrest. . . .

Any assault, drive-by shooting or reckless endangerment that is a violation of this order is a felony.

Wilson signed the order, acknowledging the above provisions, and the following provisions:

I have read the order and I understand that any violation of the order is a criminal offense, punishable by fine and/or imprisonment. I further understand that any assault, drive-by shooting, reckless endangerment, or possession of a firearm or ammunition that is a violation of this order is a felony and may constitute a federal offense.

Wilson ignored the order and moved in with Kelly and her children on March 1, 2001. On March 15, 2001, Kelly called the police claiming that Wilson had assaulted her during an altercation. Wilson was not located that day, but was arrested at Kelly's home on March 26, 2001. A credit card in the name of another individual was found on Wilson. Wilson was charged with a felony violation of a no-contact order for assaulting Kelly (count 1); felony harassment, domestic violence (count 2); a felony violation of a no-contact order based on two prior convictions for violating no-contact orders in 1991 (count 3); and second degree possession of stolen property (count 4). Prior to a jury trial, the trial judge severed count 4 from the first three charges.

With regard to counts 1 and 2, Wilson admitted at trial that he knew he was prohibited from having contact with Kelly, that he had contact with her on March 15 and March 26, and that he had violated the order numerous times. Wilson stated that Kelly and he believed violating the order was worth it because he assumed at most that he would be guilty of a gross misdemeanor and subject only to a year in jail. Wilson admitted on cross-examination that he knew a violation of the order constituted a criminal act, punishable by imprisonment. The State introduced certified court dockets and Wilson's previous guilty plea to show that he had two prior convictions for violating a court order. Kelly denied that Wilson assaulted her on March 15, recanting her earlier statements to a witness and a 911 operator.

The jury convicted Wilson of count 1, a misdemeanor violation of a court order; not guilty of count 2, assaulting Kelly on March 15, 2001; and guilty of count 3, a felony violation of a court order, based upon his two prior convictions for violating a court order and 1996 amendments to the statutes addressing violations of no-contact orders. These amendments provided, in relevant part:

> A violation of a court order issued under this chapter is a class C felony if the offender has at least two previous convictions for violating the provisions of . . . a domestic violence protection order issued under . . . this chapter . . . .[1]

A separate jury found Wilson guilty of count 4, after the individual named on the credit card found in his possession testified that she did not know Wilson and did not give him permission to possess her credit card. The trial court imposed an exceptional sentence and Wilson was sentenced to consecutive sentences on all three counts.

Wilson appeals, claiming that the 1996 statutory amendments were improperly retroactive, thus violating the ex post facto clause and upsetting his settled expectations of his 1991 plea agreement, and that the 2001 no-contact order violated due process by failing to notify him that a violation would subject him to a felony charge. Wilson's pro se brief raises additional issues of prosecutorial misconduct, ineffective assistance of counsel, and improper imposition of an exceptional sentence. We have consolidated Wilson's appeal with his personal restraint petition, which encompasses the same issues outlined in his pro se brief.

## DISCUSSION

### 1. Ex Post Facto Restrictions and Retroactive Application of Amendment.

Wilson emphasizes that the 1996 amendments substantially increased the punishment which existed under the law in effect in 1991 when Wilson was convicted of his two

---

[1] Former RCW 26.50.110(5) (Laws of 1996, ch. 248, § 16).

prior violations of a no-contact order. Thus, Wilson argues that the amendments applied retroactively to his two previous convictions and violated the ex post facto clauses of both the United States Constitution and the Washington Constitution by increasing the punishment annexed when his first two crimes were committed.[2]

■ An ex post facto law is one that (1) punishes a crime previously committed that was innocent when done, (2) makes more burdensome the punishment for a crime *after* its commission, or (3) deprives a defendant of any defense available by law at the time the act was committed.[3] The law must be substantive and retrospective, and must disadvantage the person affected by it to violate the ex post facto clause.[4] Wilson argues that the 1996 statutory amendments are the second type of ex post facto law because they increase punishment based on his 1991 convictions. We disagree.

■ "[I]t is the law in effect at the time a criminal offense is actually committed that controls disposition of the case."[5] Thus, the Washington Supreme Court held that the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, does not violate the ex post facto clause, even though offenses committed before its enactment were used to calculate the offender score for subsequent crimes, because it did not increase the punishment for past crimes.[6] The Supreme Court has also held that a 1994 statutory amendment that made it unlawful for persons previously convicted of a serious offense to possess any firearm is not an ex

---

[2] U.S. Const. art. I, § 10; Wash. Const. art. I, § 23.

[3] *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990). *See also State v. Schmidt*, 143 Wn.2d 658, 673-74, 23 P.3d 462 (2001); *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 362-63, 759 P.2d 436 (1988); *State v. Sell*, 110 Wn. App. 741, 748, 43 P.3d 1246 (2002).

[4] *State v. Ward*, 123 Wn.2d 488, 498, 869 P.2d 1062 (1994). *See also State v. Hennings*, 129 Wn.2d 512, 524-26, 919 P.2d 580 (1996); *In re Pers. Restraint of Powell*, 117 Wn.2d 175, 185, 814 P.2d 635 (1991).

[5] *Schmidt*, 143 Wn.2d at 673-74. *See also Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 316, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001).

[6] *Williams*, 111 Wn.2d at 362-63; *Schmidt*, 143 Wn.2d at 674.

post facto violation because the amendment punishes only future conduct.[7]

The law here was enacted before Wilson committed his third violation, not after, and was in place nearly five years prior to Wilson's act. Here, RCW 26.50.110(5) could not have increased the quantum of punishment after the fact because the legislature amended the statute before Wilson committed his new violation of a no-contact order in 2001. Thus, there exists no ex post facto violation.

■■ Wilson argues that because the law was retroactive it violated his expectations under his 1991 plea agreement, or violated requirements for validly retroactive laws because it contained no statement of legislative intent to be retroactive and was neither curative nor remedial. However, as discussed above, the law is not retroactive.

Furthermore, Wilson's reliance on *Immigration & Naturalization Service v. St. Cyr* to support his argument that his 1991 plea agreement was violated is misplaced.[8] *St. Cyr* addressed a unique situation where individuals pleaded guilty to offenses and the applicable deportation statutes were amended prior to their deportation hearings. The *St. Cyr* Court held that the individuals should be held to the law that existed when they entered their plea agreements and the law could not apply retroactively.[9] Here, Wilson entered plea agreements in 1991. He was then sentenced under the laws that existed at that time, not under laws that changed between his offense and sentencing.

*State v. Cruz* and *State v. Smith* are also inapplicable because both cases examined laws that purported to revive previously "washed-out" juvenile convictions.[10] Here, the 1996 amendments merely increased the criminal classification of a third violation of a court order and the potential

---

[7] *Schmidt*, 143 Wn.2d at 675-76.

[8] *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001).

[9] *St. Cyr*, 533 U.S. at 316.

[10] *State v. Cruz*, 139 Wn.2d 186, 191-93, 985 P.2d 384 (1999); *State v. Smith*, 144 Wn.2d 665, 673, 30 P.3d 1245, 39 P.3d 294 (2001).

punishment of such a conviction. They did not revive previously "washed-out" convictions and had no effect on the status of Wilson's two prior convictions or the punishment for those convictions.

"A criminal defendant must be informed of all the direct consequences of his plea prior to acceptance of a guilty plea."[11] Direct consequences are those that represent an immediate and automatic effect on the range of the defendant's punishment.[12] In 1991, Wilson was advised of the direct consequences of his plea, that his driver's license might be suspended or revoked, and that the prosecutor would recommend no contact with the victim, jail time, and two years' probation. There existed no duty to advise Wilson at that time of the possible collateral consequences of future changes in the law. The 1996 amendments applied prospectively and could not upset Wilson's expectations regarding punishment for crimes under the 1991 plea agreement.

2. Due Process and Wilson's 2001 No-Contact Order.

Wilson argues that the no-contact court order did not comply with the due process requirements of the fourteenth amendment to the United States Constitution, or that the order actively misled him about the penalties for violating the order. Due process requires that criminal statutes be properly worded so that they give fair warning of the type of conduct they purport to criminalize.[13] The statute here clearly specified that a third violation of a no-contact order would constitute a class C felony, thus complying with the requirements of due process.[14]

 Although due process requirements primarily extend to the proper wording of statutes, not court orders, other regulations or statutes may require specific notice be

---

[11] *Ward*, 123 Wn.2d at 512 (citing *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980)); CrR 4.2(d).

[12] *Ward*, 123 Wn.2d at 512 (citing *Barton*, 93 Wn.2d at 305).

[13] *Bouie v. City of Columbia*, 378 U.S. 347, 350-51, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964); *State v. Shipp*, 93 Wn.2d 510, 515-16, 610 P.2d 1322 (1980).

[14] RCW 26.50.110(1), (5).

provided on court orders.[15] Where such statutory notice is required but not given, a due process violation may occur.[16] Here, applicable statutes and city code required that the order contain in a conspicuous location the court's directives and "notice of criminal penalties resulting from violation of the order . . . ."[17] These statutes and city code also required that the written order contain the following specific language:

> You can be arrested even if the person or persons who obtained the order invite or allow you to violate the order's prohibitions. The respondent has the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order upon written application.[18]

> Violation of this order is a criminal offense under Seattle Municipal Code Section 12A.06.180 and/or RCW Chapter 26.50 and will subject a violator to arrest; any assault, drive-by shooting, or reckless endangerment that is a violation of this order is a felony. You can be arrested even if any person protected by the order invites or allows you to violate the order's prohibitions. You have the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order.[19]

The order contained these provisions and the additional language that "any violation of the order is a criminal offense, punishable by fine and/or imprisonment." The order also referenced the statute which contained the specific penalty provisions for violating no-contact orders. It is clear that the order complied with the statutory and city code requirements for notice of future violations and Wilson's due process rights were not violated for lack of statutory notice.

---

[15] *Bouie*, 378 U.S. at 349-51; *Shipp*, 93 Wn.2d at 515-16.

[16] *State v. Leavitt*, 107 Wn. App. 361, 27 P.3d 622 (2001).

[17] RCW 26.50.035(1)(c); SEATTLE MUNICIPAL CODE 12A.06.130(B).

[18] RCW 26.50.035(1)(c). *See also Spence v. Kaminski*, 103 Wn. App. 325, 331, 12 P.3d 1030 (2000).

[19] SEATTLE MUNICIPAL CODE 12A.06.130(B).

Finally, although ignorance of the law is generally no defense, a small exception exists where a court fails to give statutorily required notice of prohibited conduct and actively misleads a defendant as to the status of the law.[20] In *State v. Leavitt*, a court failed to give a defendant the statutorily required written notice that his firearm restrictions would last longer than one year, issued an order that seemed to imply that the ban would last only one year, and allowed the defendant to retain his concealed weapons permit.[21] Thus, when the defendant was later convicted of violating the court order after repossessing his firearms after a year had passed, the Court of Appeals reversed finding that his due process rights were violated.[22]

None of these unusual circumstances occurred here. Wilson was given the required statutory notice. Wilson was also given notice that any violation was a criminal offense under Seattle Municipal Code 12A.06.180 and chapter 26.50 RCW and that a violation would subject him to fine and/or imprisonment. Chapter 26.50 RCW contained the penalty provisions which indicated that a third violation would be a class C felony. The order did not specify that the listed felonies were the only felonies which would result from a violation of the order. The order did not specify that a violation would result only in a gross misdemeanor offense. Wilson signed the order and was aware of its terms.

Because the statute complied with due process requirements, the order complied with statutory notice requirements, and no unusual circumstances existed which would lead us to conclude that the trial court misled Wilson, his due process rights were not violated.

3. Personal Restraint Petition.

Wilson argues the following additional issues in his pro se supplemental brief and his personal restraint petition:

---

[20] *Leavitt*, 107 Wn. App. at 371-72.

[21] *State v. Leavitt*, 107 Wn. App. 361, 372, 27 P.3d 622 (2001).

[22] *Leavitt*, 107 Wn. App. at 372-73.

A. Felony violation of a no-contact order is erroneously placed on the fifth level of seriousness on the SRA guideline grid.

Wilson argues that a felony violation of a no-contact order is less serious than either first or second degree assault, thus it should have a lower seriousness level on the SRA grid. Although his analysis is not clear and he provides few citations, Wilson seems to imply that because a second degree assault is a class B felony, while a third violation of a no-contact order is only a class C felony, a third violation of a no-contact order cannot possibly have a seriousness level of 5 on the SRA grid, higher than the seriousness level of 4 for second degree assault.[23]

In construing sentencing statutes we must ascertain the legislative intent as indicated by its language and meaning, avoiding strained or absurd consequences.[24] The SRA statute clearly states that *any* violation of a no-contact order has a seriousness level of 5, including an assault that does not amount to either first or second degree assault.[25] No statutes specify that violation of a no-contact order is less serious than second degree assault. In fact, the level of seriousness set for any violation of a no-contact order indicates that the legislature believed this crime is more serious than either a second degree assault (level 4) or third degree assault that does not involve a violation of a no-contact order (level 3). Therefore, a third violation of a no-contact order was not improperly placed on the SRA grid and Wilson's due process rights were not violated.

---

[23] RCW 9A.36.021(2); RCW 26.50.110(5); former RCW 9.94A.320 (2001), *recodified as* RCW 9.94A.515. First degree assault is a class A felony (RCW 9A.36.011(2)) and has a seriousness level of 12.

[24] *State v. Kron*, 63 Wn. App. 688, 694, 821 P.2d 1248 (1992) (citing *State v. Keller*, 98 Wn.2d 725, 728, 657 P.2d 1384 (1983)).

[25] Former RCW 9.94A.320 (2001), *recodified as* RCW 9.94A.515; RCW 26.50.110(4).

B. Prosecutorial misconduct during the trial for count 4 caused Wilson to receive ineffective assistance of counsel.

Wilson appears to confuse the two separate claims of ineffective assistance of counsel and prosecutorial misconduct. Wilson claims that his attorney improperly received notice of and evidence for count 4, the charge of possession of stolen property, just a week before trial and thus his representation was ineffective.

The amended notice of charges regarding count 4 was filed at least two weeks prior to trial. Wilson admits his attorney made a motion to dismiss the additional charges on May 25, 2001, three weeks prior to his trial on count 4 and a week prior to the omnibus hearing. Thus, Wilson's claim that he only had one week to prepare for trial on count 4 is untrue. Further, the record illustrates that the omnibus hearing was originally scheduled for May 11, 2001, but the court granted two continuances for purposes of completing discovery. These continuances complied with the directives of CrR 4.5 and the orders do not indicate that the State was not diligent in filing the amended charges.[26] Wilson has not adequately briefed the issue nor has he shown any evidence of prosecutorial misconduct.

Although Wilson provides no citations to the record, he claims his attorney failed to adequately prepare for trial; failed to assert a particular argument or defense; failed to make an adequate investigation into the issues of count 4 or possible witnesses; and failed to object to the jury instruction on "theft" during the trial on count 4. Wilson claims that these failures constituted ineffective assistance of counsel.

To show ineffective assistance of counsel, a defendant must demonstrate that (1) his counsel's representation fell below an objective standard of reasonableness based on all the circumstances and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been differ-

---

[26] CrR 4.5(b), (c), (e).

ent."[27] A strong presumption of competent representation attaches to the review of an ineffective assistance claim.[28] Further, if trial counsel's performance can be characterized as legitimate trial tactics, it cannot serve as a basis for an ineffective assistance of counsel claim.[29]

Although not in the record, Wilson admits that his attorney filed two motions prior to trial to dismiss count 4 based on perceived violations of discovery rules. During trial, Wilson's attorney questioned Kelly about how her children found the allegedly stolen credit card; emphasized that Kelly gave Wilson permission to keep some of her credit cards; and called attention to Kelly's assertions that Wilson did not know the card was not her credit card. Although Wilson's attorney did not call witnesses, Wilson alleges he could have testified that he was incarcerated during the time the credit card was stolen. His attorney focused on the fact that the detectives did not know how the card came into Wilson's possession.

Possession of stolen property is defined as "knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen . . . ."[30] Wilson's attorney's direct examination questions prepared the jury for Wilson's testimony that his possession was accidental and unknowing. Defense counsel's closing arguments emphasized that the State did not provide any evidence that Wilson knew the property did not belong to Kelly and that only Wilson had evidence of his knowledge or lack thereof. Wilson's attorney explained the instruction on "knowingly" to the jury, and explained that the mere fact the card was in Wilson's possession for a short time did not mean the State had proved its case beyond a reasonable doubt.

[27] *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 889, 828 P.2d 1086 (1992); *State v. Bradley*, 141 Wn.2d 731, 736, 10 P.3d 358 (2000); *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 487, 965 P.2d 593 (1998); *State v. Mierz*, 127 Wn.2d 460, 471, 901 P.2d 286 (1995); *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).

[28] *Pirtle*, 136 Wn.2d at 487.

[29] *State v. Adams*, 91 Wn.2d 86, 90, 586 P.2d 1168 (1978).

[30] RCW 9A.56.140(1).

These questions and closing statements appear to be trial tactics and cannot, by themselves, serve as a basis for ineffective assistance of counsel. Further, based upon the record, it cannot be said that Wilson's counsel's performance fell below an objective standard of reasonableness, even though counsel perhaps had limited time to prepare for trial and did not call witnesses Wilson believes should have been called. The evidence defense counsel elicited during trial would have been enough to acquit Wilson if the jury believed the State had not proved its claim that Wilson knew the credit card was stolen. It appears that the jury did not.

■■ Wilson additionally claims that his attorney failed to object to an erroneous jury instruction on theft. Wilson argues that the presence of a jury instruction on theft misled the jury to believe he had stolen the credit card, as well as possessed it. A counsel's failure to notice and except to an erroneous jury instruction may demonstrate a lack of effective assistance of counsel if the defendant can show that the inaccurate jury instruction prejudiced him or her.[31] Jury instructions are not erroneous if, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue his or her theory of the case.[32]

The jury instructions here merely defined the term "stolen" in the crime possession of stolen property as "obtained by theft," and then further defined the term "theft." It was clear from the jury instruction on the crime of possession of stolen property that the State sought to prove that Wilson was guilty of possessing stolen property, not guilty of theft. Taken as a whole, the jury instructions were not misleading or erroneous and allowed Wilson to argue his theory that he did not know the property was stolen. Therefore, although Wilson's attorney did not object to the instructions, there is

[31] *State v. Howland*, 66 Wn. App. 586, 595, 832 P.2d 1339 (1992); *State v. Johnson*, 29 Wn. App. 807, 815, 631 P.2d 413 (1981).

[32] *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999).

no indication that the instruction prejudiced him or his defense.

C. The trial judge abused his discretion by not sanctioning the prosecutor for violating CrR 4.7 on count 4 and by applying an exceptional sentence for all three convictions.

A trial court may order sanctions if counsel fails to abide by discovery rules.[33] A trial court may also on its own motion dismiss a criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect his or her right to a fair trial.[34] Both of these options are discretionary, not mandatory.

As discussed above, the record does not show that the prosecution failed to abide by discovery rules. Further, it is not certain that Wilson was prejudiced by any alleged late discovery. He also has not shown that the outcome of the trial on count 4 would have been different had his attorney had more time to prepare. The trial court did not abuse its discretion by refusing to sanction the prosecutor or failing to dismiss the criminal prosecution where both options were permissive and Wilson has not shown actual prejudice.

Wilson claims that the trial court abused its discretion in applying an exceptional sentence, contending that there were no aggravating circumstances in the other two convictions before the court to warrant the sentence. The SRA provides that courts may depart upward from the sentencing guidelines under various aggravating circumstances, including if the court finds that the operation of the multiple offense policy results in a presumptive sentence "that is clearly too lenient in light of the purpose of this chapter . . . ."[35] The court must set forth the reasons for its

---

[33] CrR 4.7(h)(7).

[34] CrR 8.3(b).

[35] Former RCW 9.94A.390(2)(i) (2001), *recodified as* RCW 9.94A.535(2)(i); RCW 9.94A.010; former RCW 9.94A.400 (2001), *recodified as* RCW 9.94A.589.

departure from the SRA in written findings of fact and conclusions of law.[36]

Although Wilson does not provide the standard of review for an exceptional sentence, this court must conduct a two-part analysis.[37] " 'First, it must decide if the record supports the sentencing judge's reasons for imposing the exceptional sentence' " and uphold the judge's reasons if they are not clearly erroneous.[38] Then, " 'the appellate court must determine independently, as a matter of law, if the sentencing judge's reasons justify the imposition of a sentence outside the presumptive range.' "[39]

The State argued at sentencing that Wilson's criminal history prior to the current convictions (including 10 felonies, 8 misdemeanors, and a history of domestic violence) justified imposition of an exceptional sentence. The trial court entered findings of fact and conclusions of law, noting Wilson's previous criminal history which presented "a broad range of crimes, including, but not limited to, assault, attempted [violation of Uniform Controlled Substances Act], escape, theft, and including the current convictions, three misdemeanor violations of court orders." The trial court then found that under the SRA, Wilson would receive a presumptive sentence unaffected by his multiple convictions, and that this sentence would be too lenient in light of the purposes of the SRA, public policy, and under *State v. Stephens*.[40]

A defendant sentenced for multiple current offenses, no one of which would warrant an exceptional sentence, may as a matter of law receive an exceptional sentence based on the number of crimes he has committed

---

[36] Former RCW 9.94A.390 (2001), *recodified as* RCW 9.94A.535.

[37] Former RCW 9.94A.210(1), (4) (2001), *recodified as* RCW 9.94A.585(1), (4).

[38] *State v. Stephens*, 116 Wn.2d 238, 240, 803 P.2d 319 (1991) (quoting *State v. Fisher*, 108 Wn.2d 419, 423, 739 P.2d 683 (1987)).

[39] *Stephens*, 116 Wn.2d at 240 (quoting *Fisher*, 108 Wn.2d at 423).

[40] *State v. Stephens*, 116 Wn.2d 238, 803 P.2d 319 (1991).

in the past.[41] Because Wilson's current sentence on multiple convictions would have been unaffected by his history of convictions, the trial court's reasons justify the imposition of a sentence outside the presumptive range as a matter of law.

D. The 2001 no-contact order failed to meet the requirements of RCW 26.50.035(6).

The Domestic Violence Prevention Act[42] provides that the administrator for the courts "shall update the . . . order for protection forms . . . when changes in the law make an update necessary."[43] Wilson misreads this act to include a requirement that courts must update no-contact orders to list any and all statutory changes in penalties for no-contact orders. However, as discussed above, court orders need comply only with specific statutory notice requirements.[44] The statutory notice requirements did not change to require notice of other penalties. Thus, the law did not "make an update necessary." The court order here complied with all notice requirements and did not violate Wilson's due process notice rights.

E. The court and the prosecutor erred in calculating Wilson's offender score in violation of former RCW 9.94A.360(5)(a)(i).

The SRA provides that for the purposes of computing the offender score, all multiple prior convictions should be counted separately.[45] The SRA also provides that if the prior sentencing court found that the prior offenses encompassed the "same criminal conduct," or the current court

---

[41] *Stephens*, 116 Wn.2d at 243-44.

[42] Ch. 26.50 RCW.

[43] RCW 26.50.035(6).

[44] Seattle Municipal Code 12A.06.130(B); RCW 26.50.035(1)(c).

[45] Former RCW 9.94A.360(5)(a) (2001), *recodified as* RCW 9.94A.525(5)(a).

finds they constituted the same criminal conduct, they shall be counted as one offense.[46]

Wilson argues that because some of his previous felonies were sentenced on the same day, they should count as one offense, rather than separate offenses. The record shows that Wilson had the following 10 previous felony convictions:

| Date | Crime | Sentencing Date |
| --- | --- | --- |
| 06/19/89 | Forgery | 04/20/90 |
| 06/19/89 | Forgery | 04/20/90 |
| 06/30/89 | Forgery | 04/20/90 |
| 07/22/91 | Forgery | 10/18/91 |
| 08/22/91 | 2d degree possession of stolen property | 10/18/91 |
| 12/04/91 | Forgery | 07/02/92 |
| 02/06/92 | Forgery | 08/27/93 |
| 12/19/92 | Forgery | 08/27/93 |
| 03/26/93 | Forgery | 08/27/93 |
| 1993 | Poss. counterfeit securities | |

The trial court here properly counted each of Wilson's 10 previous felony convictions separately because the convictions had not been found to constitute the same criminal conduct by the previous sentencing courts. Additionally, the present trial court did not make a finding that any of the previous convictions constituted the same criminal conduct. Wilson failed to challenge the calculation of his offender score below and did not request the court make a "same course of criminal conduct" determination at sentencing. Thus, he has waived the right to make the argument here.[47]

---

[46] Former RCW 9.94A.360(5)(a)(i) (2001), *recodified as* RCW 9.94A.525(5)(a)(i); former RCW 9.94A.400(1)(a) (2001), *recodified as* RCW 9.94A.589(1)(a); *In re Pers. Restraint of Connick*, 144 Wn.2d 442, 458-62, 28 P.3d 729 (2001); *State v. Blakey*, 61 Wn. App. 595, 811 P.2d 965 (1991).

[47] *State v. Nitsch*, 100 Wn. App. 512, 997 P.2d 1000 (2000).

 Further, even if we were to consider his claim here, Wilson has not shown that the previous crimes sentenced on the same day involved the same criminal intent, that they were committed at the same place or time, or that the victims were the same.[48] Wilson has not even reached a threshold showing that various crimes involved the same criminal intent and should count as one offense. Wilson's offender score was not miscalculated.

In sum, we hold that the 1996 law did not violate the ex post facto clause, was not retrospective, and did not upset the expectations of Wilson's 1991 plea agreement. Wilson's due process rights were not violated through the law, Wilson's order, or any communication by the court. We also hold that none of the arguments set forth in Wilson's personal restraint petition has merit.

Affirmed on all counts. Wilson's personal restraint petition is denied and dismissed.

Cox, A.C.J., and SCHINDLER, J., concur.

Review denied at 150 Wn.2d 1016 (2003).

---

[48] *Connick*, 144 Wn.2d at 458-61.