132 P.3d 1137 (2006)
STATE of Washington, Respondent,
v.
Alejandro Lozano MORENO, Appellant.
No. 55351-8-I.
Court of Appeals of Washington, Division 1.
May 1, 2006.
*1139 Dennis John McCurdy, King County Prosecutor's Office, Seattle, for Respondent.
Thomas Michael Kummerow, Washington Appellate Project, Seattle, for Appellant.
COX, J.
¶ 1 The constitutional protection against double jeopardy is not offended if the legislature intends cumulative punishments for two or more offenses.[1] At issue here is whether the legislature intended to punish separately both felony violation of a no-contact order and third degree assault, where the former crime is based, in part, on the latter. Because legislative intent clearly indicates that separate punishments for violations of these two criminal statutes were intended, we hold that there is no double jeopardy violation. There being no other error requiring reversal, we affirm the convictions that Alejandro Lozano Moreno challenges.
¶ 2 Moreno and Cheryl Munoz began dating several years ago. Shortly after their relationship began, Moreno became physically abusive. In June 2003, the municipal court issued a no-contact order for domestic violence prohibiting Moreno from having any contact with Munoz. Despite the no-contact order, Moreno continued to see Munoz.
¶ 3 In February 2004, Moreno and Munoz were wrestling over a piece of candy when Moreno became violent. Specifically, Munoz testified at trial that Moreno assaulted her. This incident occurred while the no-contact order was in effect.
¶ 4 In May 2004, the couple was drinking and got into another fight that turned physical. Munoz testified that she and Moreno were arguing and she grabbed him by the shirt to prevent him from leaving. Moreno pushed her down and hit her in the head several times. Once the police arrived they arrested Moreno. He continued to contact Munoz in violation of the no-contact order.
¶ 5 The charges against Moreno included two counts of felony violation of a no-contact order for the incidents that occurred, respectively, on February 25 and May 9, 2004. There was also a separate count of third degree assault based on the same February 25, 2004 incident underlying one of the counts of felony violation of a no-contact order. Additional charges included one count of interfering with domestic violence reporting and two counts of misdemeanor violations of a court order.
¶ 6 Moreno represented himself at trial. During the State's rebuttal closing argument the prosecutor commented on Moreno's exercise of his constitutional right to defend himself. Moreno did not object. The jury convicted him on all counts, as charged.
¶ 7 The trial court, sua sponte, ordered a hearing to determine whether Moreno was entitled to a new trial based on the prosecutor's comments during rebuttal closing about Moreno representing himself. The trial court found that the comments constituted *1140 misconduct but had not prejudiced Moreno. The trial court denied the new trial motion.
¶ 8 At sentencing, Moreno argued that imposing sentences for both third degree assault and felony violation of a no-contact order, which both arose from the same February 25, 2004 incident, violates double jeopardy. The court disagreed and sentenced Moreno on both convictions.
¶ 9 Moreno appeals.

DOUBLE JEOPARDY
¶ 10 Moreno argues that imposing punishment for both third degree assault and felony violation of a no-contact order based on third degree assault violates double jeopardy. We hold that the legislature authorized separate punishments for these two offenses. Thus, there is no double jeopardy violation.
¶ 11 The double jeopardy clauses of the Fifth Amendment and the Washington State Constitution, article I, section 9, "protect against multiple punishments for the same offense...."[2] If the legislature authorizes cumulative punishments for both offenses, double jeopardy is not offended.[3]
¶ 12 In order to determine whether the legislature intended separate punishments for two offenses, we first look at the express language of the pertinent statutes.[4] If the language of the statutes is silent on this point, then we turn to statutory construction and apply the "same evidence" test.[5] This rule of construction focuses on whether the offenses are the same in fact and law.[6] But even if both elements of this test are satisfied, this is not dispositive of the legislature's intent where clear evidence of a contrary intent exists.[7] We review de novo whether the legislature intends to punish two crimes separately.[8]
¶ 13 Here, Moreno was convicted of third degree assault[9] and felony violation of a no-contact order[10] arising from a single incident on February 25, 2004. Moreover, the felony violation of a court order conviction was based, in part, on the jury's determination that Moreno was also guilty of third degree assault in the same incident. These two statutes do not expressly state whether the legislature intended they should be punished separately. Therefore, we turn to statutory construction.
¶ 14 Under the "same evidence" test, the two offenses are the same in fact. Both offenses were based upon the single assault of Cheryl Munoz that occurred on February 25, 2004. We assume, without deciding, that these offenses are also the same in law.[11] *1141 Thus, for purposes of our analysis, we assume that these offenses are the same for purposes of the "same evidence" test.
¶ 15 Application of this rule of construction does not end our inquiry. Although the result of the same evidence test may create a presumption that separate punishments are not intended, the test is not controlling where there is clear evidence of contrary legislative intent.[12] Clear evidence of contrary legislative intent may be determined from "the statutes' historical development, legislative history, location in the criminal code, or the differing purposes for which they were enacted."[13]

Locations in the Criminal Code
¶ 16 We start with the fact that the two statutes before us are located in different portions of this state's statutory framework. Assault is codified within Title 9A of the Washington Criminal Code. On the other hand, felony violation of a court order is not within the criminal code. Rather, it is contained within Title 26, Domestic Relations, located under the chapter titled "Domestic Violence Protection."
¶ 17 The legislature was presumably aware that the former statute existed when it passed the latter. We can think of no plausible reason why the legislature chose to enact a statute for the latter crime and place it in a location outside the then existing criminal code if it did not intend that the two crimes should be treated separately.
¶ 18 Significantly, we note that RCW 26.50.210 expressly provides that: "Any proceeding under [the Domestic Violence Protection Act] is in addition to other civil or criminal remedies."[14] This language further evidences legislative intent to treat separately punishment under RCW 26.50.110(4) from that under RCW 9A.36.031.
¶ 19 Thus, both the separation of the crimes in the statutes and the express wording indicating that proceedings under the Domestic Violence Protection Act are in addition to other criminal remedies supports our view that these two crimes are to be punished separately.

Varying Purposes for Enactment
¶ 20 We also note that there are other purposes served by the criminalization of certain violations of a court order under this statutory framework. These different purposes buttress our view that the legislature intended that the two crimes before us should be separately punished.
¶ 21 For example, in State v. Calle, the supreme court noted that the incest and rape statutes serve different purposes.[15] The primary purpose of incest legislation is to secure family harmony, whereas the primary intent of the rape statute is to prohibit acts of unlawful sexual intercourse. The court found that the different purposes of these two statutes support the result that the legislature intended separate punishments for both crimes.[16]
¶ 22 Here, felony violation of a court order and third degree assault serve different purposes. The purpose of the assault statute is to prevent assaultive behavior.[17] But there are other purposes beyond preventing assaultive behavior for the separate crime of felony violation of a no-contact order.
¶ 23 First, the legislature made express findings when enacting the felony violation of a court order statute that domestic violence "is a problem of immense proportions" that affects not only individuals but communities as well. Such violence is at the core of other *1142 major social problems.[18] Thus, our supreme court recognized that important aspects of the act are to prevent domestic violence and to provide maximum protection to victims of abuse.[19] The assault statute lacks comparable legislative findings and scope.
¶ 24 Second, violations of no-contact orders carry a greater seriousness level than either second or third degree assault. Any violation of a no-contact order has a seriousness level of 5. In contrast, third degree assault carries a seriousness level of 3, and second degree assault a seriousness level of 4.[20]
¶ 25 Third, the legislature recognized that violation of a no-contact order is a crime against the court and punishable as contempt of court.[21]
¶ 26 In sum, we conclude on the basis of the above evidence that the legislature clearly intended that the crimes of felony violation of a court order and third degree assault should be considered separate crimes and punished separately. There is no violation of Moreno's Fifth Amendment right against double jeopardy.

PROSECUTORIAL MISCONDUCT
¶ 27 Moreno also argues that the prosecutor's comments during rebuttal closing regarding the exercise of his constitutional right to defend himself denied him the right to a fair trial and entitles him to a new trial. We hold that the prosecutor's misconduct was harmless beyond a reasonable doubt.
¶ 28 To determine whether a prosecutor's comments denied the defendant a fair trial, the defendant must show the comments were improper and there was a substantial likelihood that the comments affected the jury's decision.[22] When a comment refers to a separate constitutional right, it is subject to constitutional harmless error.[23] Under this standard, the court must reverse unless convinced beyond a reasonable doubt that the evidence is so overwhelming that it necessarily leads to a finding of guilt.[24]
¶ 29 Here, the prosecutor argued in her rebuttal closing argument:
The defendant is a picture perfect example of a domestic violence abuser. He has got to be in control. He is still trying to call the shots. So much so that he has exercised his constitutional rights to defend himself, because power is that important to him.[[25]]
Moreno did not object to this argument, but because the prosecutor's comment addresses Moreno's constitutional right to represent himself, Moreno may raise the issue on appeal.[26]
¶ 30 The State properly concedes that the prosecutor's comment was improper, but argues that it was provoked by Moreno because he continuously interjected during trial with inappropriate facts, comments and opinions, and referred to inadmissible evidence in closing. Even assuming the truth of Moreno's conduct during trial, such conduct is no excuse for the comments.
¶ 31 Improper comments by the prosecutor "are not grounds for reversal if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a *1143 curative instruction would be ineffective."[27] However, "the State may not draw adverse inferences from the exercise of a constitutional right."[28] The right for Moreno to represent himself is such a constitutional right.[29]
¶ 32 Nevertheless, we hold that the prosecutor's comments did not have a substantial likelihood to affect the jury's decision because the State presented overwhelming evidence of Moreno's guilt.
¶ 33 At trial, Munoz, the victim, testified that on February 25, 2004, "[Moreno] hit me in the head a couple of times with a closed fist and cracked me in the nose and it started bleeding." Munoz tried to call 911, but Moreno ripped the phone cord out of the wall. Munoz eventually spoke to the 911 operator. The State entered the 911 tape of Munoz's 911 call into evidence and played it for the jury. During the 911 call Munoz told the police "my boyfriend just beat the [* * *] out of me . . . I'm bleeding all over the place, I think my nose is broken."
¶ 34 Officer Dan Butenschoen also testified about the same incident. He testified that when he first arrived at Munoz's apartment, Munoz had blood covering her face, blood was covering the couch and floor, and the telephone cord had been ripped out of the wall. The State admitted into evidence photographs of Munoz's injuries and the no-contacts orders, which were in effect when the incidents occurred.
¶ 35 In addition, Munoz testified about the May 9, 2004 incident. She stated that "[Moreno] tried pushing me away and pushed me down a couple times ... he hit me a couple times in the back of the head." The officers who arrived at the scene also testified at trial. One officer testified that he observed Moreno strike Munoz in the head and push her to the ground. The officers described Munoz's injuries and the State admitted photographs of her injuries into evidence.
¶ 36 After the May incident, Munoz testified that Moreno called her several times at her neighbor's house and mailed her letters and pictures. Munoz's neighbor, Virginia Blair, also testified about these calls.
¶ 37 In sum, Munoz's testimony, along with the admission of the 911 tape, the photographs of her injuries, and the officers' testimony, overwhelmingly supports a finding beyond a reasonable doubt of Moreno's guilt. The error was harmless beyond a reasonable doubt.
¶ 38 We affirm the judgment and sentence.
WE CONCUR: SCHINDLER, A.C.J., and GROSSE, J.
NOTES
[1] State v. Freeman, 153 Wash.2d 765, 771, 108 P.3d 753 (2005).
[2] State v. Graham, 153 Wash.2d 400, 404, 103 P.3d 1238 (2005) (quoting In re Pers. Restraint of Orange, 152 Wash.2d 795, 815, 100 P.3d 291 (2004)).
[3] Freeman, 153 Wash.2d at 771, 108 P.3d 753.
[4] State v. Louis, 155 Wash.2d 563, 569, 120 P.3d 936 (2005).
[5] Id.
[6] State v. Calle, 125 Wash.2d 769, 777, 888 P.2d 155 (1995) (If the defendant is convicted of two offenses that are identical both in fact and law, double jeopardy is offended. "However, if each offense, as charged, includes elements not included in the other, the offenses are different and multiple convictions can stand.").
[7] Id. at 780, 888 P.2d 155.
[8] Freeman, 153 Wash.2d at 770, 108 P.3d 753.
[9] RCW 9A.36.031(1)(f), in pertinent part states:

(1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
(f) With criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering.
[10] RCW 26.50.110(4), in pertinent part states:

. . .
(4) Any assault that is a violation of an order issued under this chapter [26], chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, and any conduct in violation of such an order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.
(emphasis added).
[11] See Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (per curiam) (The Double Jeopardy Clause barred conviction of the lesser crime, robbery with firearms (the underlying felony), where the defendant was charged and convicted of the greater crime, felony murder, based on the same incident.).
[12] Calle, 125 Wash.2d at 780, 888 P.2d 155.
[13] In re Pers. Restraint of Percer, 150 Wash.2d 41, 51, 75 P.3d 488 (2003) (citing Calle, 125 Wash.2d at 779-80, 888 P.2d 155).
[14] (Emphasis added.)
[15] Calle, 125 Wash.2d at 780-81, 888 P.2d 155.
[16] Id. at 780-82, 888 P.2d 155.
[17] See State v. Frohs, 83 Wash.App. 803, 814, 924 P.2d 384 (1996).
[18] LAWS OF 1992, ch. 11, § 1.
[19] State v. Ward, 148 Wash.2d 803, 810, 64 P.3d 640 (2003); see State v. Dejarlais, 136 Wash.2d 939, 944, 969 P.2d 90 (1998).
[20] State v. Wilson, 117 Wash.App. 1, 14, 75 P.3d 573 (2003); RCW 9.94A.515.
[21] RCW 26.50.110(3).
[22] State v. Reed, 102 Wash.2d 140, 145, 684 P.2d 699 (1984).
[23] State v. Contreras, 57 Wash.App. 471, 473, 788 P.2d 1114, review denied, 115 Wash.2d 1014, 797 P.2d 514 (1990) (quoting State v. Traweek, 43 Wash.App. 99, 107-08, 715 P.2d 1148, review denied, 106 Wash.2d 1007 (1986)).
[24] State v. Easter, 130 Wash.2d 228, 242, 922 P.2d 1285 (1996).
[25] (Emphasis added.)
[26] RAP 2.5(a)(3) (A party may raise a manifest error affecting a constitutional right for the first time on appeal.).
[27] State v. Russell, 125 Wash.2d 24, 86, 882 P.2d 747 (1994).
[28] State v. Rupe, 101 Wash.2d 664, 705, 683 P.2d 571 (1984) (Washington has yet to address a prosecutor's comments on a defendant's pro se representation. A Tennessee court ruled that "[a] prosecutor may not comment unfavorably upon the defendant's pro se representation of himself or the presentation of his case." State v. Carruthers, 35 S.W.3d 516, 578, (Tenn.2000)).
[29] U.S. CONST. amends. VI and XIV; WASH. CONST. art. I, § 22; see also Faretta v. California, 422 U.S. 806, 818-19, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).