FILED
COURT OF APPEALS
DIVISION II

2013 AUG -6 AM 9: 15

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42726-5-II |
| Respondent, | |
| v. | |
| KATHY ELAINE GLEN, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Kathy Elaine Glen appeals her jury conviction for third degree assault. Glen argues that (1) the evidence at trial was insufficient to prove that she acted with criminal negligence and that she committed the assault using an instrument or thing likely to produce bodily harm, and (2) the trial court erred in refusing to provide the jury with a fourth degree assault instruction as an inferior degree offense. Because there was sufficient evidence to prove that Glen acted with criminal negligence and because the trial court properly declined to instruct the jury on a lesser degree offense, we affirm.

## FACTS

### I. BACKGROUND

On a warm day in August 2010, Steasha Grant drove to the grocery store in Westport, Washington. Grant was accompanied by her two young cousins, her friend Ashton Hickerson, and Grant's dog. Grant, Hickerson, and Grant's cousins went into the store for approximately five minutes, leaving the dog in Grant's vehicle.

While Grant was in the store, Glen had opened the driver's side door of Grant's vehicle. Glen was standing beside Grant's vehicle and confronted her when Grant approached. Glen accused Grant of abusing her dog by leaving it alone inside Grant's vehicle. A verbal altercation between the two women ensued.

After putting the two young children into the vehicle, Grant went to the driver's side and found Glen with her body positioned in such a way that it was impossible to fully open that door. Grant opened the door partially and began to "slide in" to the driver's seat when, according to Grant, Glen took the door and "slammed it right on" Grant's head. Verbatim Report of Proceedings (VRP) at 40. The force of the impact severed a part of Grant's ear, and attempts to reattach it were unsuccessful.

Susan Smith, another store patron who witnessed the incident, described seeing Glen yelling at Grant, taking hold of Grant's door, and "intensely shaking it." VRP at 17. Smith then witnessed the door shutting, but she could not tell if it struck Grant. Smith noticed that the vehicle's door was moving because Glen "grab[bed] hold of the door before [Grant] could actually get it shut." VRP at 31. Smith witnessed Grant get out of the vehicle holding her head with blood running down her face.

Glen's version of the event differs in that she testified that Grant had forcefully hit her in the knees with the door upon entering the driver's side. In order to avoid being hit by the door a second time, Glen pushed against the door with her knee, causing her foot to slip and resulting in her "scrambling," "going backwards," and "doing the splits." VRP at 96. Glen claims that she does not recall what happened in the few seconds after she slipped nor is she aware how she could have done anything to cause the door to shut on Grant. According to Glen, this

No. 42726-5-II

momentary loss of balance also caused her sandal to come off and it was only after she retrieved her sandal from the front of Grant's vehicle that she saw Grant through the windshield, bleeding.

## II. PROCEDURE

The State charged Glen with third degree assault under RCW 9A.36.031(1)(d).[1] At the close of the evidence the trial court heard argument as to whether a lesser degree instruction or a lesser-included instruction for fourth degree assault was proper. Glen conceded that she was not entitled to a lesser-included instruction, but she maintained that the court should give a lesser degree instruction. The parties disagreed only about whether the evidence raised an inference that Glen committed only the lesser offense.

Considering the facts and Glen's theory of the case, the trial court was not persuaded that a fourth degree assault instruction was warranted because there was no evidence that Glen committed only the lesser offense. Instead, because Glen primarily contended that any force she may have used on the car door was to prevent it from hitting her, the trial court decided to instruct the jury on self-defense. The jury found Glen guilty as charged. Glen appeals.

## ANALYSIS

Glen argues that the evidence at trial was insufficient to prove that she acted with criminal negligence and that she used an instrument or thing likely to produce bodily harm. Glen contends further that the trial court erred in failing to give the requested lesser degree offense instruction. We disagree.

---

[1] The legislature amended RCW 9A.36.031 twice in 2011. LAWS OF 2011, ch. 238, § 1; LAWS OF 2011, ch. 336, § 359. These amendments are not relevant here; thus, we cite the current version of the statute.

## I. SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

Glen contends that the evidence against her was insufficient to prove that she acted with criminal negligence. "Evidence is sufficient to support a finding of guilt if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *State v. Rose*, 175 Wn.2d 10, 14, 282 P.3d 1087 (2012). "A claim of insufficient evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from that evidence." *State v. Caton*, 174 Wn.2d 239, 241, 273 P.3d 980 (2012). We consider circumstantial and direct evidence to be equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). And we defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

### B. Criminal Negligence

Glen argues that the State failed to prove that she acted with criminal negligence in causing Grant's injuries. At the close of the evidence, the trial court provided the jury with instruction 7, the to-convict instruction for third degree assault under RCW 9A.36.031(1)(d), which read in part:

> To convict the defendant of the crime of assault in the third degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1)    That on or about August 16, 2010, the defendant caused bodily harm to Steasha N. Grant;
> (2)    That the physical injury was caused by a weapon or other instrument or thing likely to produce bodily harm;
> (3)    That the defendant acted with *criminal negligence*; and
> (4)    That this act occurred in the State of Washington.

Clerk's Papers (CP) at 21 (emphasis added). Additionally, the trial court provided the jury with instruction 9, which defined criminal negligence, stating:

> A person is criminally negligent or acts with criminal negligence when he or she fails to be aware of a substantial risk that a wrongful act may occur and this failure constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation.

CP at 21.

Glen argues that reversal is required because the jury convicted her based on evidence that showed an intentional act rather than a criminally negligent act. Because the trial court instructed the jury as to the definition of criminal negligence but not as to that of intent, Glen contends that the law of the case doctrine therefore required the jury to find that she acted with criminal negligence only.[2] Even assuming that the State was constrained by the law of the case doctrine to prove criminal negligence as Glen claims, her argument is still without merit because the evidence is sufficient to support a finding of criminal negligence.

The question is whether, when viewed in a light most favorable to the State, the evidence suggests that Glen failed to be aware of a substantial risk that a wrongful act could occur as a result of her actions and if so, whether that failure constituted a gross deviation from the conduct that a reasonable person would have exercised in that situation. Here, considering the evidence in the light most favorable to the State, the evidence proves that Glen failed to be aware of a

---

[2] RCW 9A.08.010(2) allows proof of a higher mental state to also establish the presence of a lower mental state. *See also State v. Ridgley*, 141 Wn. App. 771, 782, 174 P.3d 105 (2007). The legislature has expressly stated that when criminal negligence establishes an element of an offense, such an element is also established if a person acts intentionally, knowingly, or recklessly. RCW 9A.08.010(2). Therefore, if the State proved that Glen acted with the intent to cause harm, such proof would typically be sufficient to establish that she also acted negligently.

substantial risk that harm to Grant could occur and that Glen's conduct constituted such a gross deviation.

Glen initiated an altercation with a stranger in a grocery store parking lot because she did not agree with Grant's treatment of her pet. She opened the door of a vehicle that did not belong to her. She obstructed Grant's access to her vehicle when Grant was trying to remove herself from the situation. Smith saw Glen yelling at Grant and "intensely shaking" the driver's door as Grant attempted to enter the vehicle. VRP at 17. At some point during this exchange, while parts of Grant's body were in between the car door and the inside of her vehicle, Glen's actions caused the door to close on Grant's head, resulting in substantial, irreparable bodily harm.

Glen therefore failed to be aware that her actions created a substantial risk that harm to Grant could occur because she should have known that grabbing and intensely shaking someone's car door as that person tries to enter the vehicle creates a high risk that the person entering the vehicle could be injured. When viewed in a light most favorable to the State, the evidence shows that Glen engaged in conduct constituting a gross deviation from that which a reasonable person would have exercised under similar circumstances because she prevented Grant from leaving the scene and she turned a relatively harmless verbal dispute into a violent physical altercation. The evidence was sufficient to demonstrate that Glen acted with criminal negligence.

Additionally, Glen's assertions appear to confuse intentional or volitional acts (the actus reus of the crime) with the negligent mental state (mens rea) required for a third degree assault conviction. She argues that the State proved an intentional act because Grant testified that she thought Glen was trying to harm her and because Grant saw Glen "'lift her hand up and slam'"

6

the car door. Br. of Appellant at 15 (quoting VRP at 59). But whether Glen did or did not physically intend to shut the car door on Grant's head does not preclude a finding that she was criminally negligent in causing Grant's injuries. *See State v. Foster*, 91 Wn.2d 466, 470, 589 P.2d 789 (1979); *State v. Moreno*, 132 Wn. App. 663, 666, 132 P.3d 1137 (2006); *State v. Warren*, 63 Wn. App. 477, 478, 820 P.2d 65 (1991), *review denied*, 118 Wn.2d 1030 (1992). Glen's arguments accordingly fail.

### C. Weapon or Instrument Likely to Produce Bodily Harm

Glen next argues that the State failed to establish that the car door was a weapon or object likely to produce bodily harm. Again, we disagree.

Washington's third degree assault statute provides, in part:

(1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
. . . .
      (d) With criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm.

RCW 9A.36.031. The statute does not contain a definition of "other instrument or thing likely to produce bodily harm." But our Supreme Court recently undertook a thorough examination of this language and interpreted the provision in question in *State v. Marohl*, 170 Wn.2d 691, 246 P.3d 177 (2010).

In *Marohl*, two casino patrons became involved in a verbal dispute that quickly turned physical and violent. *Marohl*, 170 Wn.2d at 695. During the course of this struggle one of the men caused the other to fall and impact the casino floor, rendering the victim unconscious and injuring his face. *Marohl*, 170 Wn.2d at 696. The issue on appeal was whether the casino floor constituted a weapon or other instrument or thing likely to produce bodily harm under RCW

9A.36.031(1)(d). *Marohl*, 170 Wn.2d at 697. The court concluded that the legislature intended to limit the class of instruments or things that give rise to a charge of third degree assault under subsection (d) such that only assaults perpetrated with an object likely to produce harm by its nature or by circumstances fall within the subsection's purview. *Marohl*, 170 Wn.2d at 699. Thus, the object does not have to be inherently weapon-like as Glen claims. Br. of Appellant at 20. Instead, the object can be in the nature of a weapon or it can be used as a weapon in order to constitute a "weapon or other instrument or thing likely to produce bodily harm." RCW 9A.36.031(1)(d).

The *Marohl* court concluded that the plain language of RCW 9A.36.031(1)(d) did not include the casino floor within the meaning of "instrument or thing," because, "under these circumstances, the casino floor was not similar to a weapon, nor was it "likely to produce bodily harm." *Marohl*, 170 Wn.2d at 700. In so holding, the court compared similar cases from other jurisdictions. *Marohl*, 170 Wn.2d at 701-02 (citing *People v. Galvin*, 65 N.Y.2d 761, 481 N.E.2d 565, 492 N.Y.S.2d 25 (1985) (pavement is dangerous instrument where defendant repeatedly struck victims head against it); *State v. Reed*, 101 Or. App. 277, 279, 790 P.2d 551 (sidewalk is dangerous instrument where victim's head was struck against it), *review denied*, 310 Or. 195 (1990); *State v. Montano*, 126 N.M. 609, 610, 973 P.2d 861 (1998) (brick wall can be dangerous weapon), *cert. denied*, 972 P.2d 351 (1999). The *Marohl* court distinguished its facts from these cases because Marohl did not proactively use the floor to cause injury. *Marohl*, 170 Wn.2d at 703. Such a distinction is important to the present case because it indicates that objects not traditionally or naturally considered "weapon[s]" can constitute "instrument[s] or thing[s] likely to produce harm" given the right circumstances.

Here, Glen, whether she intended to do so or not, used Grant's car door as a weapon and it was likely to produce bodily harm in that instance. This case would be analogous to *Marohl* had Glen and Grant been in a physical altercation during which Grant tripped and fell into the car door as an unintended consequence of the fight. If that were the case, it would not be consistent to say that the car door was an instrument or thing by which bodily harm was caused. But that is not what happened here. Instead, the evidence, viewed in a light most favorable to the State, established that Glen "took hold of the door," VRP at 16, was "intensely shaking it," VRP at 17, and "used her hand to slam the car door on [Grant's] head." VRP at 59. In this circumstance, the evidence was sufficient for the jury to conclude that the car door was an instrument or thing likely to cause bodily harm because it was used proactively to cause serious injury to Grant.

## II. LESSER DEGREE INSTRUCTION

Last, Glen argues that the trial court erred in refusing to instruct the jury on the lesser degree crime of fourth degree assault. Specifically, Glen claims that the trial court focused only on Glen's theory of the case, when it should have considered the evidence from both parties that would have supported the requested instruction.

Generally, criminal defendants are entitled to notice of the charges against them and may be convicted only of those crimes charged in the information. *State v. Tamalini*, 134 Wn.2d 725, 731, 953 P.2d 450 (1998). But RCW 10.61.003 provides that a criminal defendant may also be convicted of a crime that is an inferior degree of the crime charged. *Tamalini*, 134 Wn. 2d at 731. The statute reads:

> Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense.

RCW 10.61.003.

> An instruction for an inferior degree offense is properly administered when:
>
> "(1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense."

*State v. Fernandez-Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (quoting *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)). Elements (1) and (2) are unquestionably satisfied here. The statutes proscribe only one offense, the crime of assault. The crime of assault is divided into degrees, and fourth degree assault is an inferior degree of the charged third degree assault. The parties disagree only about whether there was evidence that Glen committed only fourth degree assault. Therefore, resolution of this issue requires an analysis of only the third element, also known as the factual component. *Fernandez-Medina*, 141 Wn.2d at 454.

A trial court's refusal to give instructions to a jury, if based on a factual dispute, is reviewed for abuse of discretion. *State v. Lucky*, 128 Wn.2d 727, 731, 912 P.2d 483 (1996), *overruled on other grounds by State v. Berlin*, 133 Wn.2d 541, 544, 947 P.2d 700 (1997). A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Kaiser*, 161 Wn. App. 705, 726, 254 P.3d 850 (2011).

When determining if the evidence at trial was sufficient to support the giving of an instruction, we view the supporting evidence in the light most favorable to the party that requested the instruction. *Fernandez-Medina*, 141 Wn.2d at 455. A requested jury instruction for an inferior degree offense should be administered "'if the evidence would permit a jury to

rationally find a defendant guilty of the lesser offense and acquit him of the greater.'" *Fernandez-Medina*, 141 Wn.2d at 456 (quoting *State v. Warden*, 133 Wn.2d 559, 563, 947 P.2d 708 (1997)). We must consider all evidence that is presented when we are deciding whether or not an instruction should have been given, but the evidence must affirmatively establish the defendant's theory of the case—it is not enough that the jury might disbelieve the evidence pointing to guilt. *Fernandez-Medina*, 141 Wn.2d at 456.

In *Fernandez-Medina*, our Supreme Court reversed the defendant's conviction for first degree assault because it determined that the trial court should have, but failed to give a second degree assault instruction. *Fernandez-Medina*, 141 Wn.2d at 456. The court explained that when all of the evidence was considered, including expert testimony from both sides, a jury could have rationally concluded that "clicking sounds" made by a gun were not necessarily caused by pulling the trigger. *Fernandez-Medina*, 141 Wn.2d at 466. The court reasoned that the lesser degree instruction was appropriate because the jury could have reached the additional conclusion that Fernandez-Medina only put the victim "in apprehension of harm" which would have been consistent with Fernandez-Medina's theory that he was guilty of only the inferior degree offense. *Fernandez-Medina*, 141 Wn.2d at 457.

The present case is distinguishable from *Fernandez-Medina*. Glen requested an instruction which would have informed the jury that fourth degree assault is committed if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another. RCW 9A.36.041(1). But unlike *Fernandez-Medina*, there was no evidence or testimony tending to establish that Glen committed only fourth degree assault and not third degree assault.

11

The State's witnesses testified that Glen used Grant's car door to cause Grant's injuries. Glen claimed and argued at trial that her use of force was lawful when she pushed the door against Grant with her knee to prevent it from striking her and that she was not sure how Grant sustained her injuries because she lost her balance and had to divert her attention to prevent herself from falling.

Therefore, the jury could have either concluded that Glen caused Grant harm by slamming Grant's car door (even if Glen did not intend to injure Grant), which would amount to criminal negligence, or it could have believed that the injuries occurred as a result of an exercise of self-defense, or by accident. Glen's stated theory of the case is completely inconsistent with any degree of assault. To justify giving a fourth degree assault instruction based on these facts, the jury would have had to conclude that Glen assaulted Grant but that she did not use Grant's car door as an instrument to cause bodily harm. No reasonable jury could have reached that conclusion based on the evidence that was available.

Again, unlike *Fernandez-Medina*, Glen offered no evidence that she committed fourth degree assault as her testimony addressed use of force for self-defense and an accidental slip and fall. Had the jury believed Glen's version of the events, it could only have concluded that no assault occurred at all. Accordingly, even when the evidence is considered favorably towards Glen, it does not support an instruction for fourth degree assault and regardless, such an instruction would be wholly inconsistent with Glen's theory of the case. Because of the facts and Glen's theory of the case, the trial judge declined to give a fourth degree assault instruction and instead offered a self-defense instruction. It cannot be said that this decision was manifestly unreasonable or based on untenable grounds.

No. 42726-5-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Johanson, A.C.J._
Johanson, J.

We concur:

_Worswick, C.J._
Worswick, C.J.

_McCarthy, J.P.T._
McCarthy, J.P.T.

13